nucane, Director, Contra Costa County Health Services Department, in his official capacity, Defendants–Appellants.

No. 97–16542.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1998.

Decided July 20, 1998.

**Jerry HUNSAKER, Jr.; Hubert Hardge; Martha Jensen, Plaintiffs–Appellees,**

**v.**

**CONTRA COSTA COUNTY; The Contra Costa County Health Services Department; The Contra Costa County Social Services Department; Philip Batchelor, Contra Costa County Administrator, in his individual and official capacities; Robert Hofmann, Interim Director, Contra Costa County Social Services Department, in his official capacity; Mark Fi-**

Bernard Knapp, Deputy County Counsel, Office of County Counsel, Martinez, CA, for defendants–appellants.

David J. Berger, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for plaintiffs–appellees.

Before: WALLACE, T.G. NELSON, and KLEINFELD, Circuit Judges.

WALLACE, Circuit Judge:

Contra Costa County and several of its administrators (County) appeal from a permanent injunction. Hunsaker and others in the plaintiff class (Hunsaker) obtained the injunction which prevented the County from administering the Substance Abuse Screening Inventory (test), a pen-and-paper screening test, to applicants for the County's general assistance program. According to Hunsaker, the test had a disparate impact on recovered and recovering drug and alcohol addicts and thus violated the Americans with Disabilities Act (Act).

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1367. The County timely appealed, and we have jurisdiction under 28 U.S.C. § 1292(a)(1). We reverse and remand.

I

In accordance with state law, the County provides general assistance benefits to the indigent and requires chemically dependent beneficiaries to participate in General Assistance Alcohol and Drug Diversion Services (program), a treatment program. *See* Cal. Welf. & Inst.Code §§ 17000, 17006. In 1992, the County began using the test to screen beneficiaries to determine participation in the program. The usefulness and motives behind the County's use of the test are disputed by the parties.

In 1995, Hunsaker filed suit, after which the parties agreed to a joint study to examine the test's effectiveness in classifying individuals as chemically dependent. After the completion of the study, the County added an additional step in the screening process: all individuals identified as chemically dependent by the test are required to participate in a clinical interview. Hunsaker does not contest the accuracy of the interview in assessing chemical dependency. Only those individuals determined to be chemically dependent by the interview are required to participate in the program.

Hunsaker asserts that the test identifies a disproportionate number of recovering and recovered addicts as false positives for chemical dependence. The recovered or recovering addicts are then allegedly burdened by being required to participate in the interviews in order to obtain general assistance benefits. The district court agreed that this violates 42 U.S.C. § 12132, and entered a permanent injunction preventing the use of the test as a screening device.

II

■ We review permanent injunctive relief for an abuse of discretion or application of erroneous legal principles. *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1493 (9th Cir.1996).

The district court held that the test disparately impacted recovering and recovered alcohol and drug addicts, which are protected classes under the Act. 28 C.F.R. § 35.131. The County does not contest that recovered and recovering drug and alcohol addicts are disproportionately identified as false positives by the test, but argues that disparate impact alone is insufficient to create a prima facie case and that Hunsaker should also

have been required to show that the test denied "meaningful access" to public benefits.

The "meaningful access" requirement stems from *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (*Alexander*), which was decided under section 504 of the Rehabilitation Act of 1973. In *Alexander*, the Court "reject[ed] the boundless notion that all disparate-impact showings constitute prima facie cases under § 504." *Id.* at 299, 105 S.Ct. 712. The Court struck a balance between making all or no disparate impacts actionable under the statute preventing discrimination: "The balance struck ... requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Id.* at 301, 105 S.Ct. 712.

We explicitly applied the interpretation given in *Alexander* to the statute at issue here, 42 U.S.C. § 12132, in *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir.1996) (*Crowder*). In *Crowder*, we struck down Hawaii's animal quarantine requirement because it disproportionately burdened the visually impaired and denied them "meaningful access to state services, programs, and activities." *Id.* *Crowder* clearly established that "section 12132 requires the state to provide 'meaningful access' to state services, programs, and activities for the disabled." *Ackley v. Corporation of State of Ariz.*, 98 F.3d 461, 462 (9th Cir.1996); *accord Weinreich v. Los Angeles Cty. Metro. Trans. Auth.*, 114 F.3d 976, 979 (9th Cir.1997).

▮ The district court found that Hunsaker failed to show a denial of "meaningful access." That finding is not clearly erroneous. Denial of "meaningful access" is a necessary element of an actionable disparate impact claim. Because the test did not deny Hunsaker meaningful access to general assistance benefits, the district court abused its discretion, and we therefore reverse the order granting a permanent injunction.

Hunsaker urges us to ignore this basic element of *Crowder* and instead focus on the regulations at issue, as the district court did. The language contained in 28 C.F.R. § 35.130(b)(8) is, on its face, broad in scope:

A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

The Justice Department's commentary to this particular regulation states that it "prohibits policies that unnecessarily impose requirements or *burdens* on individuals with disabilities that are not placed on others." 28 C.F.R. pt. 35, App. A at 468 (1997) (emphasis added). Read literally, the language of this regulation and its commentary would seem to require only that protected individuals demonstrate that a screening test imposes *any* additional burden on them in order to present a prima facie violation of the Act. However, the regulation cannot be interpreted independently of the statute under which is was promulgated: 42 U.S.C. § 12132. Such a minimal showing of the burden imposed on members of the protected class would violate the Supreme Court's rejection of the "boundless notion that all disparate-impact showings constitute prima facie" violations of the Act. *Alexander*, 469 U.S. at 299, 105 S.Ct. 712. Though the regulations cited by Hunsaker do not mention denial of meaningful access, these regulations do not eliminate the need to show a denial of meaningful access under section 12132, as interpreted by the courts, in disparate impact cases. While regulations may impose additional or more specific requirements, they cannot eliminate statutory requirements. *See Does 1–5 v. Chandler*, 83 F.3d 1150, 1153 (9th Cir.1996). In considering only the language of the regulations without acknowledging the requirements imposed by the relevant statutory language and applicable precedent, the district court committed error.

Hunsaker also suggests that we ignore or attempt to distinguish binding Supreme Court and Ninth Circuit precedent in favor of various published and unpublished district court opinions. All of these cases involve tests for professional licensing or selection using disability-related questions. *E.g.,*

**1044**

*Clark v. Virginia Bd. of Bar Examiners,* 880 F.Supp. 430 (E.D.Va.1995); *Doe v. Judicial Nominating Comm'n,* 906 F.Supp. 1534 (S.D.Fla.1995) (*Doe*); *Ellen S. v. Florida Bd. of Bar Examiners,* 859 F.Supp. 1489 (S.D.Fla.1994); *Medical Soc'y of New Jersey v. Jacobs,* 2 A.D. Cases 1318, 3 A.D.D. 207, 4 NDLR ¶ 220, 1993 WL 413016 (D.N.J.1993) (*Medical Society*).

None of these cases is controlling. Although they all involved screening tests, none involved a disparate impact claim. These cases instead concern adverse action against a disabled individual because the group administering the screening test "substitut[ed] an impermissible inquiry into the status of disabled applicants for the proper, indeed necessary, inquiry into the applicants' behavior." *Doe,* 906 F.Supp. at 1541; *see also Medical Society,* 1993 WL 413016 at *1 ("Plaintiff claims that asking the challenged questions is an unlawful inquiry into the existence of a disability, and that making licensing decisions based on affirmative answers to the questions is discrimination on the basis of disability. . . ."). There is no evidence in any of these cases that plaintiffs brought or courts examined disparate impact claims.

Unlike the cases Hunsaker relies on, the case at hand does involve a disparate impact claim, as did *Alexander* and *Crowder.* We are bound by those cases' requirement that disparate impact discrimination is actionable only if it involved a denial of "meaningful access" to public benefits.

Hunsaker also seeks to uphold the injunction on a state law ground. The district court did not rule on this claim, and we have nothing to review. We should allow the district court to consider this claim in the first instance or, in its discretion, decline to exercise supplemental jurisdiction.

REVERSED AND REMANDED.