**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ADELFO BERRUM-GARCIA,

         Petitioner - Appellant,

v.

MICHAEL COMFORT, District
Director, Bureau of Immigration and
Customs Enforcement ("BICE"),
Denver District; JOHN ASHCROFT,
Attorney General of the United States
of America; SCOTT WEBER, District
Director, Bureau of Immigration and
Customs Enforcement ("BICE"); TOM
RIDGE, Secretary of the U.S.
Department of Homeland Security;
EDUARDO AGUIRRE, JR., Acting
Director of BCIS, DHS; and
MICHAEL J. GARCIA, Assistant
Secretary of BICE, DHS,

         Respondents - Appellees.

No. 03-1181

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-RB-2339 (BNB))**

---

Jeffrey Joseph, Denver, Colorado, for Petitioner-Appellant.

Kevin T. Traskos, Assistant United States Attorney (John W. Suthers, United
States Attorney, with him on the brief), Denver, Colorado, for Respondents-
Appellees.

Before **EBEL**, **ANDERSON** and **HARTZ,**[*] Circuit Judges.

**EBEL**, Circuit Judge.

Petitioner Adelfo Berrum-Garcia ("Petitioner"), a Mexican citizen,

attempted to enter the United States illegally in January 1999, using a false name

and claiming to be a U.S. citizen. He was intercepted by the Immigration and

Naturalization Service, ordered removed to Mexico, and barred from applying for

permission to enter the country for five years. Within the month, however,

Petitioner illegally reentered the United States, this time without being

apprehended. He married a United States citizen in October 2000, and

subsequently filed an application for adjustment of immigration status from that

of an illegal alien to that of lawful permanent resident. The INS[1] determined that

Petitioner had illegally reentered the country after being removed in 1999, denied

---

[*]Judge Hartz joins all of this opinion except for Part III.B.(2).

[1]On March 1, 2003 the INS ceased to exist, and its responsibilities were divided among three distinct agencies formed within the new Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (codified as amended at 6 U.S.C. §§ 251, 271, 291) (2002). Because the actions Petitioner challenges in this appeal were taken prior to this reorganization, however, in this opinion we will refer to the relevant government agency as the INS.

his requests for permission to reapply for entry and for adjustment of status, and reinstated his 1999 removal order.

Berrum-Garcia, through counsel, promptly filed a petition for habeas corpus in the federal district court for the District of Colorado, claiming that the INS had misapplied the immigration statutes and had denied him due process and equal protection by reinstating his prior removal order in spite of his application for adjustment of status. The district court dismissed his petition after concluding that Petitioner had no statutory or due process right to be considered for adjustment of status and after finding his equal protection claim unsupported by any facts. Petitioner renewed his statutory and due process claims on appeal to this court. We agree with the district court that Petitioner has no statutory or due process rights to the relief he sought from the INS and accordingly AFFIRM the INS's reinstatement of Petitioner's prior removal order.

I.    **Background**

Petitioner Adelfo Berrum-Garcia was apprehended attempting to cross into the United States on January 9, 1999, using the assumed name of Rodolfo Jaimes-Rodriguez. When interviewed in Spanish by an INS officer, Petitioner admitted that he had falsely claimed to be a citizen of the United States in the course of his attempt to enter the country. The INS found Petitioner inadmissible under section

212(a)(6)(C)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(C)(ii), which renders inadmissible any alien who falsely represents himself as a United States citizen. The INS notified Petitioner that he was prohibited from reentering or seeking to reenter the United States for five years, and ordered him removed to Mexico that same day under the summary procedure established under 8 U.S.C. § 1225(b)(1). Approximately three weeks later, however, Petitioner illegally reentered the United States and managed to avoid capture at the border.

Petitioner subsequently married a United States citizen on October 14, 2000. In February 2001, Petitioner's wife filed a Form I-130 "Petition for Alien Relative," which the INS approved on October 9, 2001. The INS approval notice indicated that Petitioner appeared ineligible for adjustment of status to that of a lawful permanent resident. While the I-130 had been pending, however, Petitioner had applied, on August 28, 2001, for adjustment of status under INA § 245(i), 8 U.S.C. § 1255(i), on the basis of his marriage to a United States citizen.[2]

---

[2] 8 U.S.C. § 1255(i) permits an alien illegally present in the United States to apply to the Attorney General for adjustment of status to that of lawful permanent resident upon payment of a $1,000 application fee. 8 U.S.C. § 1255(i)(1). The statute states: Upon receipt of such an application and the [$1,000 fee], the Attorney General *may* adjust the status of the alien to that of an alien lawfully admitted for permanent resident if – (A) the alien is eligible to receive an

(continued...)

- 4 -

The INS scheduled an interview with Petitioner on his adjustment of status application on December 12, 2002. On that day, immediately before Petitioner's interview, his counsel filed a Form I-212 Application for Permission to Reapply for Admission to the United States after Deportation or Removal. At the subsequent interview, the INS informed Petitioner that it had determined he had illegally reentered the United States after being removed on January 9, 1999, and that his prior removal order would be reinstated pursuant to 8 U.S.C. § 1231(a)(5). Petitioner's I-212 and adjustment of status applications were denied that same day on the grounds that § 1231(a)(5) rendered him statutorily ineligible for either form of relief, and Petitioner was taken into custody.

On December 16, 2002 Berrum-Garcia filed a petition for a writ of habeas corpus in the district court, asserting jurisdiction under 28 U.S.C. § 2241. In his petition, he claimed that the INS had unlawfully denied his application for adjustment of status because his application was not barred simply because he had illegally reentered the country. Petitioner also claimed that the INS had violated his due process and equal protection rights by refusing to consider his application for adjustment of status.

_____

[2](...continued)
immigrant visa *and is admissible* to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed. Id. § 1255(i)(2) (emphasis added).

The district court dismissed his petition, finding that 8 U.S.C. § 1231(a)(5) did in fact bar Petitioner from seeking adjustment of status under § 1255(i), and that Petitioner had no due process right to have his I-212 or adjustment of status applications considered in spite of § 1231's statutory bar. Petitioner's equal protection claims were dismissed as unsupported by any relevant factual allegations in the pleadings.

In this appeal, Petitioner renews his statutory and due process claims, arguing that his requests for I-212 and adjustment of status relief are not barred by the reinstatement provision codified at 8 U.S.C. § 1231(a)(5), and that he has a due process right to have his I-212 and adjustment of status applications considered fully on their merits. He does not raise any equal protection claims, but instead seeks to challenge the validity of his 1999 removal order, protests that the INS improperly arrested him at his December 2002 interview, and argues that § 1231(a)(5) runs contrary to the value of family unity that motivates the adjustment of status provisions of the immigration statutes.

## II.    Jurisdiction

We begin by observing that Berrum-Garcia's resort to a habeas corpus petition in the district court was incorrect. In 8 U.S.C. § 1252 Congress has provided an avenue for direct judicial review of INS removal orders in the courts

of appeals.[3]  Although the text of § 1252(a)(1) speaks of judicial review for "order[s] of removal," we have previously held that this provision gives us jurisdiction to hear direct appeals from reinstatement orders entered pursuant to § 1231(a)(5).  Duran-Hernandez v. Ashcroft, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003).

We have also previously observed that the district court lacks jurisdiction over § 2241 habeas petitions raising arguments that could have been, but were not, raised on a direct appeal under § 1252.  See Duran-Hernandez, 348 F.3d at 1162 (petitioner who sought habeas review in district court on claims that should have been pursued first on direct appeal had both filed the wrong kind of action and sought relief from the wrong court); Latu v. Ashcroft, 375 F.3d 1012, 1017 (10th Cir. 2004) ("[H]abeas proceedings 'are not available to test the legality of matters which should have been raised on direct appeal.'") (quoting United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994).

In Duran-Hernandez, we nevertheless found that the petitioner's error could be cured by relying on the transfer statute, 28 U.S.C. § 1631, which permits a court to transfer a case to a court that would have had jurisdiction on the date

---

[3]"Judicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section . . . ." 8 U.S.C. § 1252(a)(1).  Subsection (b) establishes a 30-day time limit for filing direct appeals and regulates the subject matter and scope of our direct appellate review. § 1252(b).

when the action was filed, where the transferring court lacks jurisdiction over the case in question, and where such a transfer would be in the interest of justice.[4] 348 F.3d at 1162. These three conditions are met in this case as well,[5] and we therefore transfer the case according to the terms of 28 U.S.C. § 1631 and take jurisdiction under 8 U.S.C. § 1252.

## III. Discussion

### A. Statutory interpretation

In passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) Congress effected significant changes in immigration law, several of which were aimed at expediting the process of removing illegal aliens by limiting certain layers of administrative and judicial review. The amendments

---

[4]28 U.S.C. § 1631 provides: Whenever a civil action is filed in a [lower federal] court . . . or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

[5]Berrum-Garcia's habeas petition was filed within the 30-day time limit established by 8 U.S.C. § 1252(b), and the government's brief now before us urges us to take jurisdiction because Berrum-Garcia's challenge could have been filed with this court in the first instance.

to section 241 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231, provide a streamlined procedure for removing aliens who illegally reenter the United States after having previously been removed or deported.

8 U.S.C. § 1231(a)(5) provides in full:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien *is not eligible* and may not apply *for any relief under this chapter*, and the alien shall be removed under the prior order at any time after the reentry.

(emphasis added).

Petitioner's argument that § 1231(a)(5) poses no bar to his efforts to obtain permission to reapply for entry and adjustment of status is refuted by the plain language of the statute. His claim that § 1231(a)(5) prohibits only relief from deportation or removal—and thus does not prevent him from seeking adjustment of status—is contradicted by the statute's bar on "any relief under this chapter." The chapter in question is Chapter 12 of Title 8 of the United States Code, constituting the entirety of the Immigration and Nationality Act, not merely the section pertaining to removal or reinstatement of prior removal orders.

Petitioner's efforts to argue that his I-212 and adjustment of status applications had to be considered fully on their merits because they were filed prior to the INS's reinstatement decision are similarly unavailing. Section

1231(a)(5) states not only that an illegal reentrant "may not apply" for relief, but also that he is "not eligible" for relief. Once Petitioner's prior removal order has been reinstated, he no longer qualifies for any relief under the INA, regardless of whether his applications for relief were filed before or after the reinstatement decision is made. The timing of Petitioner's applications is simply immaterial.

This reading of the statutory text is supported by legislation subsequently passed by Congress. In amendments to the Legal Immigration Family Equity Act of 2000 (LIFE Act Amendments of 2000), Congress extended the immigration amnesty provided by § 1255(i)'s adjustment of status provision, and specifically exempted certain Central American aliens applying for adjustment of status from the strictures of § 1231(a)(5) See Pub. L. No. 106-554, App. D § 1505, 114 Stat. 2763A-326.[6] The house report accompanying those amendments states that their intended effect was to permit "Nicaraguan [sic], Cubans, and Haitians eligible for

---

[6]Section 1505 provided in relevant part:
(a) NICARAGUAN ADJUSTMENT AND CENTRAL AMERICAN RELIEF ACT.--
(1) IN GENERAL.--Section 202(a) of the Nicaraguan Adjustment and Central American Relief Act ["NACARA"] is amended--
(A) by redesignating paragraph (2) as paragraph (3); and
(B) by inserting after paragraph (1) the following new paragraph:
"(2) RULES IN APPLYING CERTAIN PROVISIONS. In the case of an alien . . . who is applying for adjustment of status under this section--
"(A) the provisions of [§ 1231(a)(5)] shall not apply . . ." An identical exemption was granted to aliens subject to the Haitian Refugee Immigration Fairness Act of 1998 ("HRIFA"). § 1505.

adjustment of status . . . [to] receive this relief despite having been previously removed under an order of removal . . . ." H.R. Rep. No. 106-1048, at 231 (2001) at *171. Where Congress intended § 1231(a)(5) not to pose a barrier to adjustment of status for aliens who illegally reentered the United States, it knew it needed to make a special exception to the general rule. Petitioner does not fall within any such exception, and he is therefore bound by the general rule disqualifying illegally reentering aliens from seeking adjustment of status.[7]

---

[7]Our conclusion on this point is in accord with every circuit court decision of which we are aware that has addressed this issue. In Padilla v. Ashcroft, 334 F.3d 921 (9th Cir. 2003) the Ninth Circuit rejected an identical argument to the one advanced by Petitioner, holding that an alien who illegally reentered this country was not eligible for adjustment of status because "the reinstatement provision . . . controls." Id. at 925. The Padilla court also pointed to the specific exceptions Congress made for aliens covered by NACARA and HRIFA and concluded that Congress knew how to exempt illegally reentering aliens from 1231(a)(5). The fact that those exemptions were specifically targeted at certain classes of aliens convinced the Ninth Circuit that "Congress intended no exemption" for all others. Id; accord Flores v. Ashcroft, 354 F.3d 727, 730-31 (8th Cir. 2003) (INS properly rejected § 1255(i) request for adjustment of status because of § 1231(a)(5) bar to relief); Warner v. Ashcroft, 381 F.3d 534, 540 (6th Cir. 2004) (per curiam) (same); Gomez-Chavez v. Perryman, 308 F.3d 796, 801-03 (7th Cir. 2002), cert. denied, 540 U.S. 811 (2003) (same); see also Arevalo v. Ashcroft, 344 F.3d 1, 5 (1st Cir. 2003) (evaluating § 1231's retroactive effects on the basis of assumption that § 1231(a)(5) was fatal to an adjustment of status application under § 1255(i)); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 109-10 (4th Cir. 2001) (same).

In supplemental filings after oral argument, Petitioner points us to the Ninth Circuit's recent decision in Perez-Gonzalez v. Ashcroft, 379 F.3d 783 (9th Cir. 2004), in which that court sidestepped the rule previously set forth in Padilla by finding that the alien's I-212 inadmissibility waiver request might have cured his illegal entry and thus allowed him to escape the sweep of § 1231(a)(5). Id. at

(continued...)

- 11 -

We also conclude, as a matter of statutory interpretation, that the same rule governs I-212 requests for permission to reapply for admission to the United States. Petitioner may not seek adjustment of status under § 1255(*i*) because § 1231(a)(5) bars illegally reentering aliens from "any relief" under the INA. Setting aside the due process arguments discussed below, we can find no reason to believe this language means something different when applied to the various other forms of relief normally available under the INA.

### B.    Due process

### (1)  I-212 approval would not avoid reinstatement under § 1231(a)(5).

Petitioner also argues that his due process rights under the Fifth Amendment were violated when the INS refused fully to evaluate his I-212 and adjustment of status applications on their merits. In his view, were the INS to approve his I-212 application, thereby making him admissible under 8 U.S.C. § 1182, his illegal reentry would effectively be expunged from his record. The Service's refusal to evaluate his I-212 application while citing to § 1231(a)(5) begs the question, according to Petitioner's theory, since § 1231(a)(5) only

---

[7](...continued)
793. We analyze this case in greater detail below, but conclude that it does not address the issue now at hand—i.e., whether an alien subject to reinstatement under § 1231(a)(5) is eligible for adjustment of status under § 1255(i).

applies to aliens that have reentered the country illegally, and an I-212 waiver of inadmissibility would "cure" the illegality of Petitioner's last entry, thereby putting him outside the sweep of § 1231.

In order to prevail on his due process challenge, Petitioner must show he was prejudiced by the actions he claims violated his Fifth Amendment rights. See Duran-Hernandez, 348 F.3d at 1162-63. Petitioner has not, and cannot, show prejudice in these circumstances. We therefore find that Petitioner has not shown the required prejudice, and we reject his due process claim.

Even were Petitioner successful on his I-212 request, that grant of permission to reapply would not by itself have "cured" Petitioner's illegal reentry and he would therefore have remained subject to reinstatement under § 1231(a)(5). Petitioner argues that a successful I-212 application would have effectively wiped his latest illegal reentry off the books, thus placing him outside the reach of § 1231(a)(5)'s expedited reinstatement procedure. According to Petitioner, the government's invocation of § 1231(a)(5) to cut off the path that could have let him escape from the strict terms of that very statute deprived him of due process. We find, however, that Petitioner misunderstands the nature of an I-212 waiver.

Aliens who attempted or succeeded in illegally entering the United States are denied permission even to apply for legal admission for a set term of years,

depending on the nature of their previous illegal entry. Under the terms of INA § 212(a)(9), 8 U.S.C. § 1182(a)(9), such aliens are deemed "inadmissible" and thus ineligible even to apply for a visa that would permit them to legally enter the United States. Aliens who would like not to have to wait the full three, five, ten, or in some cases twenty years before they may again apply for legal admission to the U.S. may seek permission from the Attorney General to reapply early by filling out a Form I-212 and submitting it to an American consular officer. 8 C.F.R. § 212.2. If the I-212 is approved, the alien's inadmissibility is waived, and he is no longer barred from applying for entry to the U.S. See 8 U.S.C. § 1182(a)(9)(A)(iii), (9)(B)(v), (9)(C)(ii). The legal effect of such a waiver is identical to the alien having waited out the full three, five, or ten years back in the alien's home country. The alien may now request a visa from the State Department, but he may not legally enter the United States until the visa request is granted. Approval of an alien's I-212 makes him admissible; it does not make him admitted.[8]

---

[8]Petitioner's reliance on the Eighth Circuit's decision in Lopez-Flores v. Department of Homeland Security, 376 F.3d 793 (8th Cir. 2004), amended and superseded by Lopez-Flores v. Dep't of Homeland Sec., 387 F.3d 773 (8th Cir. 2004), is misplaced. Lopez-Flores was a retroactivity case; thus, the claim presented to the Eighth Circuit was that the government's use of § 1231 as a blanket ban on relief took away rights to be considered for discretionary relief that the petitioner still had when he reentered the country before IIRIRA went into force. 387 F.3d at 775-76. The Lopez-Flores court's task was to compare

(continued...)

*(2) Petitioner is ineligible for any I-212 waiver because he previously had been removed.*

In any event, Petitioner's illegal reentry into the United States makes him ineligible for any I-212 waiver, quite apart from the effects of § 1231(a)(5). His ineligibility for an I-212 waiver, in turn, dooms his application for adjustment of status. The language and legislative history of INA § 212, codified at 8 U.S.C. § 1182, shows that Petitioner was not eligible for an I-212 waiver.

Aliens seeking adjustment of status under § 1255(i) must be physically present in the United States. Since their illegal presence renders the applicants "inadmissible" under § 1182(a)(9)(B) or (C), INS regulations require aliens applying for adjustment of status to remedy their inadmissibility by filing a Form I-212 at the same time. 8 C.F.R. § 212.2(e). A close look at the inadmissibility terms of § 1182 leads us to conclude, however, that aliens who illegally reenter the United States after having been formally ordered removed may not apply for an I-212 waiver from within the United States.

---

[8](...continued)
the avenues for relief available to the petitioner at the time he reentered the country to those now available to him under IIRIRA. We are not confident, as an initial matter, that Petitioner is correct to read the Eighth Circuit's statement, that "approval of Form I-212 retroactively cancels the disqualifying effect of the prior deportation," id. at 775 n.2, as supporting his theory that an I-212 inadmissibility waiver "cures" a prior illegal entry. Were he correct, however, and were this statement by the Lopez-Flores court intended as an analysis of current (post-IIRIRA) law, it clearly would be dicta, and in any event it would not be binding upon us.

- 15 -

Illegal reentrants to the United States are covered by 8 U.S.C.

§ 1182(a)(9)(C). Under the plain language of subsection (a)(9)(C)(ii), aliens who illegally reenter the country after having been removed or deported generally face a permanent ban on applying for admission. A waiver of this life-time inadmissibility is available, but aliens covered by this section of the statute must first exit the United States and wait ten years before applying for an I-212 waiver. 8 U.S.C. § 1182(a)(9)(C)(ii). See Memorandum from Paul W. Virtue, Acting Executive Associate Commissioner, to the Management Team et al. at 6 (June 17, 1997), reprinted in 74 No. 25 Interpreter Releases 1033, 1035 (1997). With certain exceptions for aliens fleeing torture or abuse, the statute provides no way to reduce the period of inadmissibility below 10 years.

In its recent decision in Perez-Gonzalez, the Ninth Circuit held that aliens who illegally reentered the United States, who were therefore inadmissible under § 1182(a)(9)(C), were nevertheless permitted to apply for I-212 relief while still in the United States. We respectfully disagree.

The INS regulations governing the simultaneous applications for waiver of inadmissibility and for adjustment of status direct aliens to submit their I-212 forms to the agency's "district director having jurisdiction over the place where the alien resides," thus implying what § 1255(i) already requires—that aliens applying for this combined relief do so while present in the United States. 8

- 16 -

C.F.R. § 212.2(e). The same regulations also state that I-212 waivers meant to accompany applications for adjustment of status "shall be retroactive to the date on which the alien embarked *or reembarked* at a place outside the United States." Id. § 212.2(i)(2) (emphasis added). The Perez-Gonzalez court understood these provisions as "expressly permit[ting] applicants for adjustment of status who have been previously removed or deported to apply for permission to reapply from within this country." Perez-Gonzalez, 379 F.3d at 793.

Section 212.2(e), in our view, only implies that *some* aliens illegally present in the United States may apply for an I-212 waiver without leaving the country; it does not explicitly extend that privilege to aliens who have illegally reentered the country after a prior deportation or removal. Taken in isolation, this regulatory provision is ambiguous as to whether it covers both "first-time" illegal aliens who are unlawfully in the United States without having been previously ordered removed or deported, see 8 U.S.C. § 1182(a)(9)(B), and aliens who have illegally reentered the country in defiance of a prior removal order.

The reference to "the date on which the alien embarked or reembarked" at a place outside the United States contained in Section 212.2(i)(2) is similarly ambiguous, since aliens who have left this country voluntarily before they have stayed here illegally for more than a year and before formal removal proceedings have been initiated against them may reenter the United States without becoming

- 17 -

subject to the harsher penalties meted out to aliens who, like Petitioner, have illegally reentered in defiance of a formal removal order. Compare 8 U.S.C. § 1182(a)(9)(B)(i)(I), with § 1182(a)(9)(C).

Both these ambiguities are resolved when we look to the language governing waivers of inadmissibility in § 1182(a)(9)(B) and (C). Aliens subject to subsection (B) are inadmissible for three or ten years, and either ban may be lifted if the affected alien "is the spouse or son or daughter of a United States citizen . . . if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen . . . spouse or parent of such alien." 8 U.S.C. § 1182(a)(9)(B)(v). Aliens, such as Petitioner, who are subject to subsection (C) as a result of having illegally reentered after previously being formally removed, are by default inadmissible for life. This disability may be waived only after the alien has been outside the United States for ten years.

That § 1255(i)'s adjustment of status procedure is generally available only to aliens who are guilty only of illegal entry (the "first-time" offense) and not to those who have reentered in spite of a prior removal order is confirmed by the legislative history of the LIFE Act Amendments of 2000. The House Report accompanying that legislation explains that § 1255(i)'s amnesty program is aimed at allowing illegal aliens to stay with their families if they become eligible for an

- 18 -

immigrant visa after they have entered illegally. "In the absence of section [1255(i)], such aliens must pursue their visa applications at a U.S. embassy or consulate outside the United States and are potentially subject to the three and 10 year bars on admissibility instituted by section 301(b) of [IIRIRA]." H.R. Rep. No. 106-1048 at 230. Section 301(b) of IIRIRA is now codified at 8 U.S.C. § 1182(a)(9), and the only provision within subsection (a)three(9) calling for "three and 10 year bars on admissibility" is (a)(9)(B), with the three-year bar applying to illegal aliens who have been in-country 180 days to a year and the ten-year bar applying to aliens who remain here illegally for over a year. It is therefore apparent to us that Congress did not consider those who reenter the United States in defiance of a prior deportation order to be qualified for § 1255(i)'s amnesty.

The exceptions for Nicaraguan, Cuban, and Haitian immigrants made in those same LIFE Act Amendments provide further support for our reading of the statutes. Congress made such immigrants eligible for adjustment of status "despite having been previously removed," id. at 231, and accomplished this by stating that:

> (A) the provisions of [§ 1231(a)(5)] shall not apply; and
> (B) the Attorney General may grant the alien a waiver on the grounds of inadmissibility under subparagraphs (A) and (C) of [§ 1182(a)(9)].

Pub. Law No. 106-554 App. D, § 1505, 114 Stat. 2763A-326. Thus, Congress evidently believed that § 1182(a)(9)(A) and (C) posed an obstacle to aliens who had been previously removed.

The INS's own regulations implementing the expanded adjustment of status remedy provided for Nicaraguan and Cuban nationals provide yet more support for our reading. The regulations establish a "[s]pecial rule for waiver of inadmissibility grounds for NACARA applicants under [§ 1182](a)(9)(A) and [§ 1182](a)(9)(C)," under which Nicaraguan and Cuban applicants for adjustment of status may "apply for a waiver of these grounds of inadmissibility *while present in* the United States." 8 C.F.R. § 245.13(c)(2) (emphasis added). That this provision is designated as a "special rule" reinforces our conclusion that the general rule for all other aliens is that waivers of inadmissibility under subsections (a)(9)(A) and (C) must be sought from outside the United States.

Petitioner was formally removed from the United States in 1999 after he was found to have falsely claimed U.S. citizenship. His subsequent illegal reentry therefore made him subject to § 1182(a)(9)(C)(i)(II), thereby rendering him ineligible to apply for an I-212 waiver or for adjustment of status under § 1255(i) while he remained in this country. Petitioner was not prejudiced by the INS's refusal to consider his applications for I-212 waiver and for adjustment of status on their merits, and his due process claim therefore fails.

*C.     Remaining claims*

Petitioner briefly raises some other claims for relief, all of which we reject. The first of these challenges, that the automatic reinstatement procedures set forth in § 1231(a)(5) undermine the value of family unity, presents a policy argument that is beyond the purview of this court. Petitioner's characterization of his arrest at the close of his adjustment of status interview as a "bait and switch" is both unsupported by any evidence that the INS engaged in deliberate entrapment or misdirection and is blind to the fact that the INS is required to detain aliens found to be subject to an outstanding removal order. See 8 U.S.C. § 1231(a)(2). Finally, Petitioner's attempt to challenge the validity of his 1999 removal is barred by § 1231(a)(5)'s statement that prior removal orders are "'*not subject to being reopened or reviewed*'" when they are reinstated. See Garcia-Marrufo v. Ashcroft, 376 F.3d 1061, 1063-64 (10th Cir. 2004) (quoting § 1231(a)(5)).

## IV.    Conclusion

We find that Petitioner's efforts to obtain adjustment of status and waiver of inadmissibility are barred by statute, and that his due process claim is without merit. We must therefore AFFIRM the decision of the INS reinstating Petitioner's 1999 removal order and removing him to Mexico.