**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 10 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BHUPINDER SINGH SONDH,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General, [*]

Respondent.

Nos. 03-9544 & 03-9582
(D.C. No. A76-685-308)
(Petitions for Review)

**ORDER AND JUDGMENT** [**]

Before **SEYMOUR**, **KELLY**, and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases

are therefore ordered submitted without oral argument.

---

[*] On February 4, 2005, Alberto R. Gonzales became the United States Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the Respondent in this action.

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Bhupinder Singh Sondh, a native and citizen of India, petitions for review of two orders issued by the Board of Immigration Appeals (BIA). The first order dismissed his appeal from an immigration judge's (IJ) denial of asylum and restriction on removal. [1] The second order denied Sondh's motion to reopen, so that he could apply for adjustment of status. We have jurisdiction pursuant to 8 U.S.C. § 1252(a), (b), and we deny both petitions for review. [2]

Sondh entered the United States in September 1996 as a visitor authorized to stay for thirty days, but he never left. He was arrested about one year later, placed in removal proceedings, and ultimately charged with being removable pursuant to 8 U.S.C. § 1227(a)(1)(B), as an alien present in violation of United States law. Shortly before his arrest, he married Denise Allen, who filed an immediate relative visa petition on his behalf. That petition was denied after the district director determined that the marriage had been entered into to evade the immigration laws.

---

[1] "Restriction on removal was known as 'withholding of removal' prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996." *Elzour v. Ashcroft*, 378 F.3d 1143, 1148 n.5 (10th Cir. 2004). We refer to the new statutory "restriction on removal" terminology in this order and judgment. *See* 8 U.S.C. § 1231(b)(3).

[2] On March 1, 2003, the Immigration and Naturalization Service (INS) ceased to exist. Its responsibilities were divided among three agencies within the new Department of Homeland Security. Because the INS commenced the relevant deportation proceedings, we refer to the relevant government agency as the INS. *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1160 n.1 (10th Cir. 2004).

Thereafter, Sondh applied for asylum. At a hearing, he testified that he is a Sikh from Punjab, India, where he was a member of the All India Sikh Student Federation (AISSF) and experienced persecution due to his Sikh religion and his political involvement in the AISSF. He joined the AISSF after his brother, an active AISSF member and alleged militant, was murdered in a fake encounter in June 1993 by para-military and police authorities. Sondh's participation in the AISSF consisted of attending anti-government demonstrations and funeral services for Sikh men killed by the police. In November 1993, Sondh was arrested at home, taken into custody, and beaten, kicked, and hung from the ceiling by his hands. He was released five days later after his family paid 50,000 rupees. In June 1996, he was arrested at his uncle's house and detained a second time. During his five days in custody, he was beaten, tortured, given electric shocks, deprived of sleep, and kicked. He was released after his family paid 100,000 rupees. Thereafter, he went into hiding until his mother made arrangements for him to travel to the United States. Sondh's parents and two sisters still live in Punjab and his brother has lived in Dubhai, United Arab Emirates since 1997. Sondh claimed the police are still looking for him and several general letters from friends and family members supported this claim.

The BIA upheld the IJ's determination that Sondh was ineligible for asylum because country conditions had changed since Sondh left Punjab. Thereafter,

Sondh filed with the BIA a motion to reopen so that he could apply for an adjustment of status based on his recent marriage to a United States citizen, LaDonna Mittelsted. The BIA denied the motion to reopen.

I. APPEAL NO. 03-9544, ASYLUM AND RESTRICTION ON REMOVAL

A. ASYLUM

To be eligible for consideration for asylum, an alien must establish that he is a refugee. *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004). A refugee is "any person . . . outside [his] country of . . . nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). As is relevant here, Sondh can establish refugee status by showing he "has suffered past persecution, which gives rise to a [rebuttable] presumption [of] . . . a well-founded fear of future persecution." *Wiransane*, 366 F.3d at 893 (quotation omitted; alteration in original) (recognizing that alien also can show refugee status by showing either a well-founded fear of future persecution or severe past persecution giving alien compelling reasons for being unwilling or unable to return to his country of origin).

Thus, if Sondh shows past persecution, he is presumed to have a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1). But he may be denied asylum if conditions in Punjab, India have changed such that he no longer has a well-founded fear of persecution if he returns. *Id.* § 1208.13(b)(1)(i)(A); *see also Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 838 (8th Cir. 2004) (referring to regulation). [3]

The BIA determined that although Sondh experienced past persecution in 1993 and 1996, [4] he did not have a well-founded fear of persecution because the INS provided evidence of changed circumstances in Punjab. We review this determination under the substantial evidence standard, treating the administrative fact findings as conclusive unless the record shows a reasonable fact-finder would be compelled to conclude to the contrary. *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004) (citing, *e.g.*, 8 U.S.C. § 1252(b)(4)(B)).

Substantial evidence in the record supports the BIA's finding of changed circumstances. We agree with the BIA's findings that

---

[3]     Because Sondh cannot show that he is eligible for asylum, we need not consider the second step in the asylum equation, concerning the INS's discretion to grant relief under 8 U.S.C. § 1158(b). *See Batalova v. Ashcroft*, 355 F.3d 1246, 1254 (10th Cir. 2004).

[4]     We have recognized in dictum that beatings, arrests, and assaults can establish past persecution. *See Kapcia v. INS*, 944 F.2d 702, 708 (10th Cir. 1991).

> after the violence in the Punjab reached its height between 1978-1992, law and order has been established and the government is making progress in pursuing accountability for past abuses. Sikhs in Punjab have participated heavily in state elections. Two police killings since 1997 have attracted considerable attention and the policemen involved face criminal charges. Although lower level police officers who are ill-trained and ill-paid are sometimes guilty of abuses, the abuses are not condoned by the government and the guilty are usually prosecuted and punished.

No. 03-9544, R. at 2. The BIA based these findings on State Department Reports concerning conditions in Punjab. These reports, which present specific information about Punjab, may be probative in well-founded fear cases and may constitute substantial evidence. *Yuk v. Ashcroft*, 355 F.3d 1222, 1235-36 & 1236 n.12 (10th Cir. 2004).

The July 1997 Addendum to the India Country Profile documented a significant improvement in political and social conditions in Punjab. The 1997 "election in Punjab was a definitive step in the restoration of normalcy in that state after the separatist violence and the harsh suppression of the separatist movement by the Indian government during the 1978-1992 period." No. 03-9544, R. at 182. "The law and order situation in the Punjab is by all accounts essentially normal." *Id.* In addition, "[m]ilitancy-related human rights abuses by the police or other security forces decreased significantly since 1993." *Id.* at 184; *see also id.* at 182 ("militancy-related abuses have decreased significantly from the early 1990's and [there is] progress toward accountability for past abuses").

-6-

Also, membership in AISSF alone will not result in prosecution or mistreatment. *Id.* at 183. "There is no evidence that Sikhs or Sikh participants face harassment, mistreatment or persecution merely on the basis of their religion or political opinions." *Id.* Sikhs who associated with separatist militants or supported militants may be detained and questioned by the police. *Id.* Although "[i]ndividual Sikhs may be mistreated from time to time," they are not mistreated "more than are other Indians." *Id.* Due to this change in conditions, "[i]ndividuals previously involved in the militancy are returning to India or emerging from underground." *Id.* at 184.

The 1999 State Department Country Reports on Human Rights Practices for India further indicated that "[i]n Punjab the pattern of disappearances prevalent in the early 1990's appears to be at an end." *Id.* at 131. Approximately 100 police officials were being investigated or prosecuted for human rights abuses. *Id.* at 132.

Before the IJ, Sondh's only response to these reports was that there are still problems in Punjab. *Id.* at 97. As the BIA found, he provided no specific or detailed information to counter the information in the country reports.

We conclude the BIA undertook the requisite individualized analysis of the information in the State Department reports. *See Yuk*, 355 F.3d at 1236 n.12. The BIA correctly recognized that this change in conditions occurred after Sondh

left India.  Because Sondh adduced no contrary evidence about conditions in India after the date of his departure, it cannot be said that the record compels a result different than the one reached by the BIA.

Sondh argues on appeal, however, that the BIA failed to recognize that his persecution began in 1993, at the time of his first arrest, and occurred again in 1996, at the time of his second arrest–both occurring *after* 1992 when conditions supposedly got better.  Further, he notes that the 1997 Addendum states that "[c]ustodial abuse and other police abuses remain a significant problem, despite efforts by the National Human Rights Commission and the courts to eliminate these practices."  No. 03-9544, R. at 183.  He suggests that only police involved in abusing high profile persons have been prosecuted.  *Id.* at 184.  Additionally, he speculates that local level police officers are not likely to be investigated and prosecuted for inflicting harm on individuals such as himself and, unlike the moderate Sikh party that won elections and does not support a separate state, AISSF, to which he belonged, does support a separate state and "may . . . still be regarded as a threat to the Indian government."  Aplt. Br. at 15.

Even if some information in the State Department reports is not completely favorable to the INS's position, we do not reweigh the evidence; we review only to determine whether substantial evidence supports the BIA decision.  *See Yuk*, 355 F.3d at 1236.  Under the facts presented here, a reasonable factfinder could

find that Sondh does not have a well-founded fear of persecution. He has not shown that the evidence he presented nor the questions he raised on appeal would compel a result different than the one reached by the BIA. Sondh therefore has failed to meet the heavy burden placed on him to challenge the adverse asylum determination.

## B. RESTRICTION ON REMOVAL

Because Sondh has failed to establish that he is eligible for asylum, it follows that he is unable to meet the more demanding evidentiary burden required for restriction on removal. *See Elzour*, 378 F.3d at 1149; *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234, 1236 (10th Cir. 2003).

## II. APPEAL NO. 03-9582, MOTION TO REOPEN

Sondh sought reopening and remand to apply for adjustment of status pursuant to *In re Velarde-Pacheco*, 23 I. & N. Dec. 253 (BIA 2002), based on a pending immediate relative visa petition filed by his current wife, LaDonna Mittelstedt. *Velarde-Pacheco* held that

> a properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by Matter of Shaar, 21 I&N Dec. 541 (BIA 1996),[ [5]] or on any other procedural grounds; (4) the

---

[5]     *Shaar*, 21 I. & N. Dec. at 542-49, provides that a motion to reopen in order
(continued...)

motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on Matter of Arthur, [20 I. & N. Dec. 475 (BIA 1992)].

23 I. & N. Dec. at 256. *Arthur* held that the BIA would deny "motions to reopen for consideration of applications for adjustment of status based upon unadjudicated visa petitions." 20 I. & N. Dec. at 479.

The INS opposed the motion under the first part of the fifth factor in *Velarde-Pacheco*, asserting that Sondh was statutorily ineligible for adjustment of status under 8 U.S.C. § 1154(c), "because he previously sought to be accorded immediate relative status by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws," No. 03-9582, R. at 2. [6] The BIA denied Sondh's motion to reopen based on this substantive opposition, finding that the motion did not meet the criteria set forth in *Velarde-Pacheco*.

We review the BIA's decision for an abuse of discretion. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from

---

[5](...continued)
to apply for suspension of deportation should not be granted if the alien is subject to a statutory bar.

[6]     Sondh's first wife, Denise Allen, filed this immediate relative visa petition.

established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (quotation omitted).

The INS opposed the motion to reopen on the ground that Sondh was statutorily ineligible for adjustment of status under § 1154(c). This reason does not state opposition to the motion to reopen based on *Arthur . Velarde-Pacheco* permits the INS to oppose the motion on any non- *Arthur* ground. Thus, Sondh was ineligible for relief under *Velarde-Pacheco* , *see Bhiski v. Ashcroft* , 373 F.3d 363, 371-72 (3d Cir. 2004), and the BIA did not abuse its discretion in denying the motion to reopen.

Sondh, however, argues that the finding of marriage fraud with respect to his marriage to Allen should not preclude a finding of ineligibility for reopening because that finding was made without the benefit of a hearing comporting with due process. Specifically, he contends he did not have the opportunity to cross examine Allen or INS witnesses, to testify on his own behalf, or to inspect all evidence against him, including the tape recording of his and Allen's interviews.

This is the first time Sondh has made this due-process argument. After the INS opposed his motion to reopen on ineligibility grounds, Sondh did not respond. His failure to assert this due process issue before the BIA constitutes failure to exhaust administrative remedies with respect to the issue and deprives this court of jurisdiction to consider the matter on appeal. *See Akinwunmi v. INS* ,

194 F.3d 1340, 1341 (10th Cir. 1999) (per curiam) (holding that although there is no exhaustion requirement for constitutional challenges to immigration laws, because BIA has no jurisdiction to review constitutional claims, BIA does have authority to reopen to correct procedural errors, including failure to follow due process). "Judicial review does not extend to points [Sondh] could have made before the [BIA] but did not." *Rivera-Zurita v. INS*, 946 F.3d 118, 120 n.1 (10th Cir. 1991).

The request to consolidate review of the orders for removal and denying the motion to reopen is GRANTED. *See* 8 U.S.C. § 1252(b)(6). The motion for oral argument is DENIED. The petitions for review are DENIED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge