**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREGORIO PEREZ-GONZALEZ,

*Petitioner*

v.

ALBERTO GONZALES,* Attorney
General,

*Respondent.*

No. 02-73294

Agency No.
A79-766-957

ORDER

Filed April 18, 2005

Before: Dorothy W. Nelson, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Order;
Dissent by Judge Gould

---

## ORDER

The government's Motion to Reconsider filed on February
7, 2005, is hereby DENIED. Judge Gould's Dissent from
Denial of Motion to Reconsider is attached hereto.

SO ORDERED.

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

GOULD, Circuit Judge, dissenting from the order denying motion to reconsider:

I would follow the holding of the Tenth Circuit in *Berrum-Garcia v. Comfort*, 390 F.3d 1158 (10th Cir. 2004), and deny the petition. *Berrum-Garcia* criticizes the majority's holding that 8 C.F.R. § 212.2 permits persons previously removed or deported, who illegally reenter the United States, to seek permission to reapply for admission from within the United States. *Berrum-Garcia* points out, and I agree, that the majority decision is inconsistent with the plain language of INA § 212(a)(9)(C)(ii), which requires "aliens who illegally reenter the country after having been removed or deported" to "first exit the United States and wait ten years before applying for an I-212 waiver" while still outside the country.[1] *Berrum-Garcia*, 390 F.3d at 1166.

The majority offers two reasons for looking to 8 C.F.R. § 212.2 instead of INA § 212(a)(9)(C)(ii) in assessing whether Perez-Gonzalez's application for an I-212 waiver was valid. The majority first asserts that it is necessary for us to regard 8 C.F.R. § 212.2 as controlling because this is the only way we can reconcile alleged conflicts between INA § 245(i) and INA § 212. *See* Maj. Op. at 791 ("[I]t is illogical to conclude that § 245(i) awarded illegal entrants the right to apply for adjustment of status, but then made it statutorily impossible for the Attorney General to grant it to them because they would never be considered admissible under the provisions of INA § 212."); Maj. Op. at 793-94; Maj. Op. at 795-96 ("The

---

[1]INA § 212(a)(9)(C)(ii) states that § 212(a)(9)(C)(i)'s life-time inadmissibility provision, which covers previously removed or deported aliens:

> shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

statutory provisions in § 241(a)(5), § 245(i), and § 212(a) should be read to harmonize with one another . . . .").

I disagree because there is no necessary conflict between INA § 245(i) and § 212(a)(9)(C), which is the subsection of § 212 that specifically covers "Aliens previously removed," like Perez-Gonzalez, who have "crossed the border and are currently living in the country without lawful status." Maj. Op. at 794 n.9. INA § 245(i) provides that an alien physically present in the United States after entering without inspection may apply for adjustment of status if: (1) the alien is the beneficiary of a petition or an application for labor certification filed on or before April 30, 2001; (2) the alien pays a $1,000 fee; (3) the alien is eligible to receive an immigrant visa; (4) the alien *is "admissible," as defined by INA § 212*; and (5) an immigrant visa is immediately available to the alien at the time the application is filed. INA § 245(i)(1)-(2); Maj. Op. at 790-91. Section 212(a)(9)(C) in turn provides that aliens like Perez-Gonzalez, who illegally reenter the country after having been removed or deported are inadmissible, and therefore ineligible for § 245(i) adjustment of status, unless they apply for and receive an I-212 waiver under § 212(a)(9)(C)(ii), which as noted above, they cannot do from within the United States.

A straightforward application of these two provisions, which can rationally be read together without conflict, leads to the conclusion that Perez-Gonzalez cannot qualify for adjustment of status under the plain language of § 245(i) because he is inadmissible under § 212(a)(9)(C). That Perez-Gonzalez applied for an I-212 waiver does not save him from § 212(a)(9)(C)'s bar to admissibility because he did not comply with § 212(a)(9)(C)(ii), which requires that such applications be filed from outside the United States before reentry. Where then, is the statutory conflict that prevents us from affirming the INS' determination that Perez-Gonzalez is ineligible for a § 245(i) adjustment because he is inadmissible under § 212(a)(9)(C)? There is none.

In my view, the conflict we must address is that between INA § 212 and 8 C.F.R. § 212.2, when the regulation is given the unduly broad interpretation urged by the majority. It is well-settled that a "regulation cannot be interpreted independently of the statute under which i[t] was promulgated," and that "[w]hile regulations may impose additional or more specific requirements, they cannot eliminate statutory requirements." *Hunsaker v. Contra Costa County*, 149 F.3d 1041, 1043 (9th Cir. 1998). The majority errs by "considering only the language of the regulations without acknowledging the requirements imposed by the relevant statutory language." *Id.*

When one considers that INA § 212(a)(9)(C)(ii) states that aliens previously removed or deported must apply for waivers from inadmissibility prior to "reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory," the incongruity of interpreting 8 C.F.R. § 212.2 to permit such aliens to obtain a waiver under more lax procedures is apparent. The majority erroneously treats 8 C.F.R. § 212.2 as an independent authority for I-212 waivers, separate from INA § 212 itself, *see* Maj. Op. at 794 n.10, when 8 C.F.R. § 212.2 is an agency regulation that implements INA § 212.

In *Berrum-Garcia*, the Tenth Circuit reconciled 8 C.F.R. § 212.2 with INA § 212 by asserting that the regulation was ambiguous because it "only implies that *some* aliens illegally present in the United States may apply for an I-212 waiver without leaving the country; it does not explicitly extend that privilege to aliens who have illegally reentered the country after a prior deportation or removal." 390 F.3d at 1167. Scrutinizing the language of INA § 212 and the legislative history and language of the LIFE Act, the Tenth Circuit resolved this ambiguity in favor of the government, concluding that only " 'first-time' illegal aliens who are unlawfully in the United States without having been previously ordered removed or deported" can apply for a waiver under the regulation, whereas aliens like Perez-Gonzalez "who have illegally reen-

tered the country in defiance of a prior removal order" cannot. *Id.* at 1167-68.

I conclude that the Tenth Circuit's narrowing construction of the regulation is reasonable, and prefer its moderate approach to the more drastic alternative of invalidating the regulation because it conflicts with the plain language of the statute it is meant to implement. *See Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1543 n.21 (9th Cir. 1993) ("Regulations that are inconsistent with the provisions of the act they implement cannot stand.").

The Tenth Circuit's approach is appropriate because the government never challenged 8 C.F.R. § 212.2's validity, but rather argued that the majority had erred in interpreting the regulation too broadly. The government pointed out that the regulation predates IIRIRA and the enactment of INA § 212(a)(9)(C), and asserted that the majority's reading of the regulation extends 8 C.F.R. § 212.2 beyond the scope of INA § 212 as amended by IIRIRA. Given that no challenge was made to the regulation's validity, a court should hesitate to strike it down in the face of the general principles that duly noticed agency regulations are presumed valid and that a heavy burden must be met by those who would overturn them. *See Boske v. Comingore*, 177 U.S. 459, 470 (1900) ("Those who insist that . . . a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress."); *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir. 1977) ("[T]he Supreme Court places a heavy burden on those who would overturn an administrative regulation."); *United States v. Boyd*, 491 F.2d 1163, 1167 (9th Cir. 1973) ("Where a statute specifically delegates to an administrative agency the power to make rules [as 8 U.S.C. § 1103 does here], courts recognize a presumption that such rules, when duly noticed, are valid."). Instead, there is no judicial impediment to our proceeding down the path urged

by the government and adopted by the Tenth Circuit, giving the regulation a narrowing construction that permits it to stand alongside the statute it implements.

The majority also suggests that its broad reading of 8 C.F.R. § 212.2 is necessary to give weight to Congress' goal in enacting INA § 245(i) of allowing "spouses, children, parents and siblings of permanent residents or U.S. citizens [to] be able to adjust their status in the U.S. and avoid needless separation from their loved ones." Maj. Op. at 793 (alternation in original) (quoting Joint Memorandum, Statement of Senator Kennedy, 146 Cong. Rec. S11850-52 (daily ed. Dec. 15, 2000)). I agree that Congress enacted § 245(i) to help keep families together, a laudable goal that all can value. However, reading the regulation as it does, the majority disregards another of Congress' important immigration policies, which is to "expedit[e] the process of removing illegal aliens." *Berrum-Garcia*, 390 F.3d at 1163; *see also* S. Rep. No. 104-249, at 2 (1996) (stating that the amendments are "intended . . . to increase control over immigration . . . expediting the removal of excludable and deportable aliens"); *id.* at 7 ("Aliens who violate U.S. immigration law should be removed from this country as soon as possible."); H.R. Rep. No. 104-469, at 13 (1996) (explaining that IIRIRA was designed to "assure removal and prevent further reentry" and that aliens who "seek reentry . . . are subject to immediate removal under the prior order"); *id.* at 107-08 (noting that pre-IIRIRA procedures were "cumbersome and duplicative").

In considering whether a regulation is permissible in light of the statute it implements, "we look not only at the precise statutory section in question, but analyze the provision in the context of the governing statute as a whole, presuming congressional intent to create a 'symmetrical and coherent regulatory scheme.'" *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299, 1303 (9th Cir. 2004). Thus, in interpreting 8 C.F.R. § 212.2, we must be mindful not only of the congressional

policy underlying INA § 245(i), but also of the policies underlying other sections of the INA, such as § 212(a)(9)(C).

*Berrum-Garcia*'s approach enables us to read INA § 212 and 8 C.F.R. § 212.2 in a way that reasonably accommodates both of Congress' policy goals, not just the family unity goal championed by the majority. INA § 212(a)(9)(C) provides that aliens previously removed or deported are inadmissible, thereby paving the way for the government expeditiously to remove them, but at the same time, § 212(a)(9)(C)(ii) sets forth procedures permitting such aliens to apply for a discretionary waiver from inadmissibility.[2]

I respectfully dissent.

---

[2]Although the requirements in § 212(a)(9)(C)(ii) are stringent, Congress designed them to be commensurate with the degree of the immigration offense committed by the aliens subject to inadmissibility under subsection (C), which covers the most serious grounds for inadmissibility in INA § 212(a)(9). In contrast, lesser offenders who fall within § 212(a)(9)(A) because they were deported immediately upon their arrival to the United States can apply for the same waiver under § 212(a)(9)(A)(iii) without having to wait ten years, but even they have to apply for the waiver "prior to [their] reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory."

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.