**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAMON DURAN-HERNANDEZ,

    Petitioner,

v.

JOHN ASHCROFT, United States
Attorney General; MICHAEL
HESTON, District Director,
Immigration and Naturalization
Service ("INS"); and JAMES W.
ZIGLAR, Commissioner, INS,

    Respondents.

No. 02-9513

ORDER
Filed October 28, 2003

Before **TACHA**, Chief Judge, **HOLLOWAY** and **EBEL**, Circuit Judges.


Respondent's motion for publication of this court's order and judgment

filed on July 21, 2003 is granted. A copy of the published opinion is attached.


        Entered for the Court
        PATRICK FISHER, Clerk of Court

        By:
            Amy Frazier
            Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 21 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENH CIRCUIT

RAMON DURAN-HERNANDEZ,

      Petitioner,

v.

JOHN ASHCROFT, United States
Attorney General; MICHAEL
HESTON, District Director,
Immigration and Naturalization
Service ("INS"); and JAMES W.
ZIGLAR, Commissioner, INS,

      Respondents.

No. 02-9513

Petition for Habeas Corpus Pursuant to an Order of Transfer Issued by the
United States District Court
for the District of Kansas
(D.C. No. 01-3488-RDR)

James S. Phillips, Jr., Phillips & Phillips, Chartered, Wichita, Kansas, for
Petitioner.

Cindy S. Ferrier, Office of Immigration Litigation, Civil Division (Linda S.
Wendtland, Assistant Director, with her on the brief), United States Department
of Justice, Washington, D.C., for Respondents.

Before **TACHA**, Chief Judge, **HOLLOWAY** and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

Petitioner Ramon Duran-Hernandez (hereinafter "Duran"), a Mexican citizen, was ordered removed from the United States in 1998 after he falsely claimed United States citizenship at the U.S.–Mexico border. He was barred from reentering the country for five years. Only two years later, however, Duran reentered the United States illegally and thereafter applied for adjustment of his immigration status. The Immigration and Naturalization Service rejected his application and reinstated his prior removal order.

Duran, represented by counsel, filed a habeas corpus petition in the United States District Court for the District of Kansas, challenging the INS's reinstatement procedures on due process grounds. The district court, adopting the recommendation of a magistrate judge, transferred the petition to this Court pursuant to 28 U.S.C. § 1631. Both parties assume, and we agree, that the petition is now before us as a direct appeal from the INS adjudication.

Because we find that Duran has failed to prove that he was prejudiced by the INS's reinstatement proceedings, we AFFIRM the decision of the INS.

**BACKGROUND**

On April 12, 1998, Mexican national Ramon Duran-Hernandez was caught attempting to enter the United States illegally with his American citizen wife at the Presidio, Texas, Point of Entry. Later that day, in a signed, sworn statement

- 2 -

to an INS officer, Duran admitted that he was not a U.S. citizen and that both he and his wife had falsely claimed that he was a U.S. citizen when they tried to cross the border that morning. Duran admitted knowing that it was a crime to falsely claim U.S. citizenship. Duran also admitted to having lived illegally in the United States for 10 years prior to his reentry attempt and to having been previously ordered deported in 1997.

That same day, the INS found that Duran was inadmissible to the United States under the Immigration and Nationality Act ("INA"), which renders inadmissible any alien who falsely represents his United States citizenship. Immigration and Nationality Act § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii). Pursuant to the applicable provision of the INA, the INS ordered Duran returned to Mexico. 8 U.S.C. § 1225(b)(1)(A)(i), INA § 235(b)(1)(A)(i). The INS gave Duran a written notice stating that 1) he was barred from reentering the United States for five years from the date of his departure (April 12, 1998); 2) if he wished to reenter the United States before the end of that five-year period, he must ask for and receive permission to do so from the Attorney General (by using application forms available at any U.S. Consulate or INS office); and 3) that he could be criminally prosecuted for reentering without such permission. Duran signed the notice and walked back to Mexico.

On January 15, 2000—within the five-year ban—Duran again illegally

entered the United States by walking through the desert near El Paso, Texas, in violation of 8 U.S.C. § 1182(a)(9)(A)(i), INA § 212(a)(9)(A)(i). He was not caught at that time and remained in the United States.

On April 13, 2001, Duran applied (through his wife) for adjustment of status based on his 1997 marriage to an American citizen, under 8 U.S.C. § 1255( i), INA § 245( i).[1] Eight months later, on December 18, 2001, the INS denied Duran's application. To be eligible for adjustment of status, an alien must be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(i)(2)(A), INA § 245(i)(2)(A). Because Duran had reentered the United States within the five-year ban and without first applying to the Attorney General for permission, the INS found that Duran was not "admissible to the United States for permanent residence" and therefore was ineligible to have his status adjusted. The INS also noted that Duran had admitted to having illegally entered the United

---

[1]That statute allows an alien who is physically present in the United States to apply to the Attorney General for adjustment of status upon submission of a $1,000 application fee. 8 U.S.C. § 1255( i)(1)(C), INA § 245( i)(1)(C).

> Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if—(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence ; and (B) an immigrant visa is immediately available to the alien at the time the application is filed.

8 U.S.C. § 1255( i)(2), INA § 245( i)(2) (emphasis added).

States ten years before his 1998 attempt.

The next day—December 19, 2001—the INS began and concluded the process of reinstating Duran's 1998 removal order. During that process, Duran gave a second sworn statement to the INS. Before he gave that statement, he signed a section of the Sworn Statement form acknowledging that he understood his rights, that anything he said could be used against him, and that he did not wish to consult with a lawyer. In his handwritten answers to preprinted questions on the Sworn Statement form, Duran admitted, <u>inter alia</u>, 1) that he had been deported on April 12, 1998; 2) that he last entered the United States on January 15, 2000, "near El Paso, TX. walking in the desert"; and 3) that he never applied to the U.S. Attorney General for permission to reenter the country after his initial deportation.

That same day (December 19, 2001), the INS had Duran sign a Notice of Intent/Decision to Reinstate Prior Order, which stated that the INS would be reinstating its April 12, 1998 removal order pursuant to 8 U.S.C. § 1231(a)(5), INA § 241(a)(5). That statute—which is at the core of Duran's appeal—states as follows:

> (5) Reinstatement of removal orders against aliens illegally reentering. If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is <u>not subject to being reopened or reviewed</u>, <u>the alien is not eligible and may not apply for any relief</u> under this Act, and the alien

shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5), INA § 241(a)(5) (emphasis added). The Notice form

informed Duran that he "may contest this determination by making written or oral

statement [sic] to an immigration officer. You do not have the right to a hearing

before an immigration judge." Duran checked a box stating that he did not wish

to make a statement, and he signed the form. The INS then issued its final

reinstatement decision, which consisted of an INS official's signature under one

sentence of preprinted text that stated, "Having reviewed all available evidence,

the administrative file and any statements made or submitted in rebuttal, I have

determined that the above-named alien is subject to removal through

reinstatementof [sic] the prior order, in accordance with section [illegible on the

blurred copy in the record, but presumably § 241(a)(5)] of this Act."

On December 31, 2001, Duran filed (through counsel) a habeas corpus

petition with the United States District Court for the District of Kansas. First, he

challenged the constitutionality of the INA's reinstatement provisions as violative

of his due process rights. Second, he challenged the INS's purported failure to

pursue his application for adjustment of status before reinstating the prior

removal order. A magistrate judge recommended that the case be transferred to

the Court of Appeals, because "reinstatement is actually the enforcement of a

prior final removal order," over which the Court of Appeals has exclusive

jurisdiction. Citing Castro-Cortez v. INS, 239 F.3d 1037, 1046 (9th Cir. 2001), the magistrate judge concluded that transfer, rather than dismissal, was appropriate "because jurisdiction in these cases has been in a state of flux." The district court agreed and ordered the case transferred to the Tenth Circuit.[2]

## DISCUSSION

Congress has declared that petitions for review of INS orders of removal must be filed "with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2), INA § 242(b)(2).[3] Duran did not follow this procedure; rather, he bypassed direct

---

[2]On April 5, 2002, Duran filed an emergency motion for a stay of deportation pending appeal, as he was to be deported to Mexico later that day. In an April 5 Order, we denied the motion. Although neither the parties nor the record mention Duran's current whereabouts, we presume that he is now back in Mexico.

[3]Although § 1252 speaks specifically of judicial review of "orders of removal," every circuit to address the question has found § 1252 to cover review of reinstatement orders as well. See, e.g., Gomez-Chavez v. Perryman, 308 F.3d 796, 801 (7th Cir. 2002); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 295 (5th Cir. 2002); Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 861, 868 (8th Cir. 2002); Bejjani v. INS, 271 F.3d 670, 674 (6th Cir. 2001); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 105 (4th Cir. 2001); Castro-Cortez v. INS, 239 F.3d 1037, 1043 (9th Cir. 2001).

Our Circuit has two conflicting unpublished opinions regarding this issue. Compare Lopez-Herrera v. INS, No. 00-9501, 2000 U.S. App. LEXIS 774 (10th Cir. Jan. 20, 2000), at *3 ("[T]his court is specifically barred from reviewing the agency's reinstatement of a prior deportation order."), with Yanez-Torres v. INS, No. 99-9504, 2000 U.S. App. LEXIS 1525 (10th Cir. Feb. 4, 2000), at *2 ("We

(continued...)

review and filed a habeas corpus petition (his first error) in the district court (his second error) under 28 U.S.C. § 2241.[4] The district court then transferred that petition to the Tenth Circuit under the transfer statute, 28 U.S.C. § 1631, which permits a court to transfer a case where there is "a want of jurisdiction" and transfer would be "in the interest of justice." Id. The district court's use of the transfer statute cures Duran's second error, the filing of his petition in the district court as opposed to the Tenth Circuit. That leaves us with only his first error—filing a habeas petition instead of a direct appeal—to consider. Both parties proceed as if Duran had properly filed a direct appeal with this court.[5] In

_____

[3](...continued)
have jurisdiction to review the final order reinstating the 1981 deportation order under 8 U.S.C. § 1252(a)(1)...."). We recognize that unpublished decisions are not binding authority, United States v. Goff, 314 F.3d 1248, 1250 (10th Cir. 2003), and therefore follow the weight of authority in other circuits and our own opinion in Yanez-Torres. Accordingly, we hold that we have jurisdiction to hear petitions for direct review of reinstatement orders under 8 U.S.C. § 1252, INA § 242.

[4]We note that Duran's petition, although filed in the wrong court, was timely. Petitions for review of orders of removal must be filed within thirty days of the date of the final order of removal. 8 U.S.C. § 1252(b)(1), INA § 242(b)(1). Petitioner's reinstatement order became final on December 19, 2001, and he filed his habeas petition twelve days later, on December 31, 2001.

[5]Duran's brief states, "Petitioner originally filed a habeas corpus action while incarcerated in Kansas, but the United States District Court ordered the case transferred to the Tenth Circuit Court of Appeals. The case is now proceeding as a petition for review of the agency action." Pet. Br. at 2 (emphasis added). For its part, the Government's brief states, "A district court transferred Duran's case (initially brought as a habeas petition) to this Court under 28 U.S.C. § 1631....

(continued...)

- 8 -

the interests of justice, we will also treat Duran's petition as if it had been so filed and review it as a direct appeal of the INS's action.  See Lopez v. Heinauer, 332 F.3d 507, 510–11 (8th Cir. 2003); Batista v. Ashcroft, 270 F.3d 8, 12 (1st Cir. 2001); Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001).

Turning to the merits of Duran's appeal, his due process claim fails because he has not proven that he suffered prejudice as a result of the INS's reinstatement procedures.  The regulation governing reinstatement of removal orders, 8 C.F.R. § 241.8(a), directs an immigration officer to determine three facts before reinstating a prior order of removal: 1) whether the alien was subject to a prior order of removal; 2) whether the alien is the same alien who was previously removed; and 3) whether the alien illegally reentered the United States.  Because Duran contests none of these facts, he cannot prove that additional procedural safeguards would have changed the result in his case.  This failure to prove prejudice leads us to reject Duran's due process claim.  See Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 302 (5th Cir. 2002); United States v. Garcia-Martinez, 228 F.3d 956, 964 n.10 (9th Cir. 2000); Salazar v. Ashcroft, No. 01-3342, 2002 U.S. App. LEXIS 12814 (3d Cir. June 27, 2002), at **4-5.

---

[5](...continued)
This Court has jurisdiction to review the INS' reinstatement order pursuant to Section 242(a)(1) of the INA, 8 U.S.C. § 1252(a)(1)."  Gov't Br. at 2 (emphasis added).

We also reject Duran's adjustment of status claim. Duran asserts that the INS reinstated his removal order before it adjudicated his adjustment of status application. The record proves that the opposite is true: the INS adjudicated and rejected Duran's adjustment of status application on December 18, 2001, and it reinstated his removal order one day later, on December 19, 2001. Duran's claim to the contrary clearly lacks merit.

For the foregoing reasons, we AFFIRM the decision of the INS.