**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALEJANDRO MENDEZ SUAREZ,

Petitioner,

v.

MICHAEL COMFORT, District
Director, Immigration and
Naturalization Service; JAMES W.
ZIGLAR, Commissioner, Immigration
and Naturalization Service; and JOHN
ASHCROFT, Attorney General of the
United States,

Respondents.

No. 03-9578

(INS No. A75-289-953)

(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

## I.    BACKGROUND

Petitioner Alejandro Mendez Suarez, a citizen of Mexico, was excluded and

deported from the United States on December 11, 1996, after attempting to enter

the country by providing counterfeit documents at a port of entry in El Paso,

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Texas. He illegally reentered the United States in October 1999. In September 2002 Petitioner was arrested in Colorado on a domestic-violence charge. He was released on bond but then taken into custody by the Immigration and Naturalization Service (INS)[1]. On September 30, 2002, the INS issued a "Notice of Intent/Decision to Reinstate Prior Order." It reinstated the December 11, 1996, order under § 241(a)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(5), on October 29, 2002. The next day Petitioner sought habeas relief in the district court. Concluding that he was actually seeking direct review of the reinstatement order, the district court transferred the case to this court under 28 U.S.C. § 1631.

It is difficult to ascertain specifically what Petitioner is arguing in his brief. As best we can determine, Petitioner contends that (1) the district court improperly transferred the case to this court instead of granting habeas relief; (2) the reinstatement of the prior order deprived him of due process because it caused him to violate his bond and jeopardized his defense in the Colorado state proceedings; (3) the reinstatement procedure set forth in INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), should not have been applied to him because he voluntarily

_____

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). Because the events at issue here predate that reorganization, we continue to refer to the INS in this opinion.

departed the United States before the statute's effective date; (4) his prior exclusion is not a bar to his right to adjust status under the LIFE Act, INA § 245, 8 U.S.C. § 1255; (5) he was denied due process in the prior deportation proceedings; and (6) § 1231(a)(5) violates due process. To the extent that he intended to raise additional issues, we decline to consider them due to his failure to set forth a coherent argument. *Cf. American Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal."); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (even when a pro se plaintiff is involved, "the court will not construct arguments or theories for the plaintiff").

We exercise jurisdiction to review the reinstatement order under INA § 242, 8 U.S.C. § 1252, *see Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003), and affirm the decision of the INS.

## II. DISCUSSION

### A. Transfer of this Case

As an initial matter, we hold that the district court properly transferred the case to this court. Petitioner apparently contends that the district court should have granted him habeas relief instead of transferring the case. We agree with the district court that Petitioner was actually attempting to challenge the INS's

reinstatement decision, which he should have done through a petition for review to this court. *See Duran-Hernandez*, 348 F.3d at 1162. Because Petitioner could have sought review of the reinstatement order in this court when he sought habeas relief in the district court, the district court properly transferred the case under 28 U.S.C. § 1631. (The habeas petition was filed only one day after the reinstatement decision, and this court has jurisdiction to review reinstatement orders, *Duran-Hernandez*, 348 F.3d at 1162 n.3. )

**B.    State Criminal Proceeding**

Petitioner asserts that he was denied due process because his removal caused him to violate the bond on which he was released and jeopardized his defense in the Colorado criminal proceeding. But we cannot discern exactly what relief Petitioner is seeking. Although he could perhaps seek relief through a separate civil action or pursue the matter in the Colorado criminal proceeding, we fail to see what relief we could grant in this case, in which our jurisdiction is only to review the removal order. Because we can provide no relief, we need not address the merits of the matter.

To the extent that Petitioner is arguing that the prior exclusion order should not have been reinstated while he was released on bond and facing criminal charges, we reject the argument. For the order to have been properly reinstated, the INS need only have found that Petitioner was "subject to a prior order of

removal," that he was "in fact an alien who was previously removed," and that he had "unlawfully reentered the United States." *See* 8 C.F.R. § 241.8(a). The INS was not required to consider whether reinstating the prior order would cause Petitioner to violate bond or would forestall criminal proceedings.

## C. Applicability of § 1231(a)(5)

Petitioner argues that he voluntarily departed the United States prior to the effective date of IIRIRA, which "should not trigger 'reinstatement'" under § 1231(a)(5). Aplt. Br. at 4. He claims that reinstatement "was improper due to the difference in the law between the date of his voluntary departure and the date of the reinstatement and that the differences in the law caused [him] to rely on the state of the law at the time that he entered into the voluntary departure." *Id.* at 8. According to Petitioner, "real knowledge of the potential effect of reinstatement cannot be ascribed to [him] as 'reinstatement' (at the time that he took the voluntary departure) never applied to voluntary departures and 'reinstatement' (prior to 1997) was applied by the [INS] only for the most extreme, violent or socially reprehensible criminals who reentered." *Id.* at 10 n.1.

We first note that the record does not support Petitioner's contention that he voluntarily departed the United States in 1996. Instead, the record reveals that he was ordered excluded and then deported. In any event, even if Petitioner left

the country voluntarily after being ordered excluded, that departure would be considered a deportation or removal. *See* 8 U.S.C. § 1101(g).

Furthermore, we disagree with Petitioner to the extent that he is arguing that application to him of the § 1231(a)(5) reinstatement procedure would have been an improper retroactive application of the statute. The reinstatement provision was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, on September 30, 1996, and became effective on April 1, 1997. Although Petitioner reentered the United States in October 1999, after the IIRIRA went into effect, the initial exclusion order was entered on December 11, 1996, before the statute's effective date. (Petitioner asserts in his brief on appeal that he reentered the United States within five days of his "voluntary departure" in 1996, which would have been before IIRIRA's effective date. *See* Aplt. Br. at 12 n.3. But in his sworn statement during the reinstatement proceeding he stated that the last time he entered the United States after his deportation was in October 1999.)

We see no retroactive effect of the statute here. To be sure, if Petitioner's most recent entry into the country had predated the IIRIRA, there would be a retroactivity issue. *Compare Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (§ 1231(a)(5) not applicable to alien who reentered before IIRIRA effective date), *Bejjani v. INS*, 271 F.3d 670, 684-87 (6th Cir. 2001) (same), *and Castro-Cortez v.*

*INS*, 239 F.3d 1037, 1051-52 (9th Cir. 2001) (same), *with Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 106-109 (4th Cir. 2001) (§ 1231(a)(5) applies to alien who reentered before IIRIRA effective date), *and Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 299-302 (5th Cir. 2002) (same). But here the conduct at issue—the unlawful reentry—postdated the statute's effective date, so there is no retroactive application of the statute. *See Avila-Macias v. Ashcroft*, 328 F.3d 108, 114 (3d Cir. 2003) ("[a]pplying IIRIRA to [the petitioner]--an alien who was deported prior to its effective date, but who reentered afterwards--does not have an impermissible retroactive effect because the consequences of an illegal reentry at the time that he reentered are the consequences he faces now"); *Warner v. Ashcroft*, 2004 WL 1727075 at *3 (6th Cir. 2004) (because the petitioner reentered the United States after IIRIRA's effective date, there was "no pre-enactment conduct sufficient to constitute a basis for a retroactivity claim," and the petitioner "was on notice of the consequences of his illegal reentry before he chose to illegally reenter the United States"); *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("[t]here can be no retroactive effect from applying IIRIRA's reinstatement procedures . . . where the statute was in effect at the time of [the] illegal reentry"); *Perez-Gonzalez v. Ashcroft*, 2004 WL 1801894, *2 (9th Cir. 2004) (following *Avila-Macias*).

Accordingly, we reject Petitioner's argument that the reinstatement provision was improperly applied to him because he voluntarily departed the country before its effective date.

**D.     Adjustment of Status**

Petitioner is apparently arguing that he was entitled to an adjustment of status under the LIFE Act, INA § 245, 8 U.S.C. § 1255, and that the reinstatement of the prior order interfered with his ability to obtain an adjustment of status. But Petitioner states in his brief that he was previously denied an adjustment of status because he was "barred by the 21 year age-out provisions." Aplt. Br. at 15. He has not demonstrated that he subsequently sought to adjust his status, and in any event it is clear that he is ineligible for an adjustment of status. The LIFE Act requires that applicants be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(i)(2)(A); *see Duran-Hernandez*, 348 F.3d at 1160; *Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003). Petitioner is, however, inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because he previously sought admission through misrepresentation. *See Padilla*, 334 F.3d at 925-26. Thus, to the extent that Petitioner contends that the prior order should not have been reinstated because he was entitled to an adjustment of status, we disagree.

**E.     Due Process**

Petitioner contends that the reinstatement procedure set forth in 8 U.S.C. § 1231(a)(5) violates due process, and suggests that he was denied due process in the original deportation proceedings. We lack jurisdiction to review the underlying deportation order, *see Garcia Marrufo v. Ashcroft*, 376 F.3d 1061, 1063 (10th Cir. 2004); 8 U.S.C. § 1231(a)(5), and will therefore consider only Petitioner's argument regarding the reinstatement procedure.

We need not, however, reach the merits of Petitioner's reinstatement-procedure due process claim because he cannot demonstrate that he was prejudiced by the purported constitutional violation. An order of removal may be reinstated when an immigration officer determines that (1) "the alien has been subject to a prior order of removal"; (2) "the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal"; and (3) "the alien unlawfully reentered the United States." 8 C.F.R. § 241.8. Petitioner does not contest that he illegally reentered the United States and does not argue that he is not in fact the subject of the December 11, 1996, order of exclusion. Although he claims that he voluntarily departed instead of being deported or removed (a contention that we have rejected), his failure to contest that he was ordered excluded conclusively establishes the first requirement for proper reinstatement of the 1996 order. *See* 8 U.S.C. § 1101(g); 8 C.F.R. § 241.8. Whatever process Petitioner contends was

due would therefore not have affected the result in this case, and Petitioner is not entitled to relief. *See Duran-Hernandez v. Ashcroft*, 348 F.3d at 1163.

## III.    CONCLUSION

We AFFIRM the decision of the INS.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge