**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ALFONSO ANTUNEZ-OBREGON,

　　　　Petitioner,

v.

ALBERTO R. GONZALES, * Attorney
General,

　　　　Respondent.

No. 04-9529
(No. A42 328 407)
(Petition for Review)

---

**ORDER AND JUDGMENT** **

---

Before **HENRY, ANDERSON** , and **TYMKOVICH** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\* On February 4, 2005, Alberto R. Gonzales became the United States
Attorney general. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

\*\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Alfonso Antunez-Obregon petitions for review of an order of the Bureau of Immigration and Customs Enforcement ("ICE"), Department of Homeland Security. The order reinstated his prior order of deportation and ordered his removal under Section 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5) (2000), which was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). In an associated criminal proceeding, Mr. Antunez-Obregon pleaded guilty to one count of illegal reentry by an alien deported subsequent to conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). *See United States v. Antunez-Obregon*, 2005 WL 2010189, *1 (10th Cir. Aug. 23, 2005). In the petition for review of his immigration proceedings at bar, Mr. Antunez-Obregon challenges the reinstatement of the order of deportation. Our jurisdiction to review the reinstatement order arises under 8 U.S.C. § 1252(a). *Duran-Hernandez v. Ashcroft,* 348 F.3d 1158, 1162 n.3 (10th Cir. 2003). Because we conclude that (1) we have no jurisdiction to review Mr. Antunez-Obregon's underlying order of deportation; (2) he was not prejudiced by any procedural irregularities or omissions in the reinstatement process; and (3) he was not prejudiced by not having a hearing before an administrative law judge (ALJ), we deny the petition.

Mr. Antunez-Obregon, a Mexican citizen, entered the United States in 1990. He subsequently pleaded guilty to illegal investment as the result of his involvement in a marijuana-trafficking scheme. Based on this conviction, the Immigration and Naturalization Service [1] ("INS") initiated deportation proceedings against him. After a hearing for which Mr. Antunez-Obregon did not appear, an order of deportation was issued in 1991. [2] Mr. Antunez-Obregon appealed, arguing only that his criminal conviction did not provide a basis for deportation. The Bureau of Immigration Appeals ("BIA") dismissed the appeal on June 15, 1992, and Mr. Antunez-Obregon did not seek review of that dismissal in the federal courts.

The warrant of deportation arising from the 1991 proceedings was executed on July 20, 1992. In 1998, Mr. Antunez-Obregon was arrested in California. He

---

[1] "On March 1, 2003 the INS ceased to exist, and its responsibilities were divided among three distinct agencies formed within the new Department of Homeland Security." *Berrum-Garcia v. Comfort,* 390 F.3d 1158, 1160 n.1 (10th Cir. 2004). The reinstatement procedures that are the subject of this petition for review were carried out by the Bureau of Immigration and Customs Enforcement ("ICE").

[2] A deportation decision dated June 7, 1991 and referencing file number A42 328 407 is in the record, *see* R. at 24-26. A letter attached to the decision provided that appeal had to be taken on or before June 24, 1991. *Id.* at 23. But Mr. Antunez-Obregon did not file his appeal from a decision with the same file number until August 27, 1991, *see id.* at 21, and the BIA's order dismissing the appeal with the same file number states that the appealed-from decision was dated August 14, 1991. *Id.* at 20. The August 14 decision is not in the record.

admitted under oath that he had illegally reentered the United States on August 26, 1997, by crossing the border in El Paso, Texas, after having been previously deported, and that he had not applied for permission to reenter the country. Without objection, the INS reinstated Mr. Antunez-Obregon's prior order of deportation without additional administrative proceedings, as provided by § 1231(a)(5), and apparently sent him back to Mexico.

In 2004, however, Mr. Antunez-Obregon was arrested in Kansas. He again admitted that he was illegally present in the United States after deportation and without permission. The attorney general issued a second notice of intent to reinstate the 1991 deportation order and to again remove Mr. Antunez-Obregon from the United States. Mr. Antunez-Obregon indicated that he did not want to contest his reinstatement, so an authorized ICE agent issued a reinstatement decision and a warrant for Mr. Antunez-Obregon's arrest.

Mr. Antunez-Obregon now petitions for review of this decision, raising three arguments that he claims make the reinstatement of his 1991 deportation order invalid as a violation of due process: (1) the attorney general failed to prove removability by clear, convincing, and unequivocal evidence because the record does not contain the specific order of removal that is being reinstated and because the notice of intent to reinstate that order does not contain the date Mr. Antunez-Obregon illegally reentered the country the second time; (2) the

underlying deportation order is unconstitutional because, in 1991, the BIA denied meaningful review by its summary dismissal of his appeal from that order; and (3) the reinstatement of his deportation order violates due process because the reinstatement was determined by an ICE agent without a hearing. Because these are all legal questions, we review them de novo. *See Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We address each argument below.

**A. Procedural irregularities.** An immigration officer must "determine three facts before reinstating a prior deportation order or order of removal: 1) whether the alien was subject to a prior order of removal; 2) whether the alien is the same alien who was previously removed; and 3) whether the alien illegally reentered the United States." *Duran-Hernandez*, 348 F.3d at 1162-63. Mr. Antunez-Obregon argues that the failure to include in the record a copy of the correct 1991 deportation order and the failure to include the date of his reentry in the last notice of intent to reinstate his 1991 deportation order violate his right to due process. He asserts that, without those things, there is insufficient evidence to show that he was, in fact, subject to a prior order of deportation. But "[i]n order to prevail on his due process challenge, Petitioner must show he was prejudiced by the actions he claims violated his [constitutional] rights." *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1165 (10th Cir. 2004); *see Avila-Macias v. Ashcroft*, 328 F.3d 108, 114-15 (3d Cir. 2003) (holding that reinstatement order

need not specify date of reentry and failure of notice to counsel is not due process violation unless alien can demonstrate prejudice).

Mr. Antunez-Obregon has admitted under oath that he is subject to a prior deportation order and that he illegally reentered the United States in August 1997. Therefore, contrary to his assertions, it is not impossible to determine whether the reinstatement statute should be applied to him. Because of these admissions, Mr. Antunez-Obregon has not, and cannot, show prejudice by the failure to include the correct deportation order in the record or the date of his second illegal reentry in the notice of intent. We therefore reject his due process claim and his claim that the reinstatement procedures may not apply to him because he may have reentered the United States before IIRIRA's effective date.

**B. Constitutionality of the underlying deportation order.** We do not address Mr. Antunez-Obregon's argument that the 1991 deportation order is unconstitutional. By statute, we have no jurisdiction to review the propriety of an underlying deportation order on a petition for review of a reinstatement order. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . , under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed . . ."); *Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1063-64 (10th Cir. 2004).

We reject Mr. Antunez-Obregon's premise that *INS v. St. Cyr*, 533 U.S. 289 (2001), which involved a change in the law after the petitioner's guilty plea, requires that collateral review of the prior order of removal must always be available in a review of a reinstatement order. In *St. Cyr*, direct review of the removal order was statutorily barred, but the Supreme Court held that the statutory language did not abrogate habeas corpus review under 28 U.S.C. § 2241[3]. *See* 533 U.S. at 311-13. Here, on the other hand, under the review statute in effect at the time of his deportation proceedings, Mr. Antunez-Obregon had the

---

[3]     We note that Congress recently enacted the "Real ID Act" amending the judicial review statute. *See* Pub.L. No. 109-13, Div. B., § 106, 119 Stat. 231, 310 (2005). It was signed into law May 11, 2005, and most provisions are effective on that date. The Real ID Act, *inter alia,* shifted certain immigration disputes formerly raised through habeas corpus in the district courts to the courts of appeals and converted them into petitions for review. Congress added a new provision codified at 8 U.S.C. § 1252(a)(5). Subsection (a)(5) provides: "Exclusive Means of Review.- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section." Thus, this section makes a petition for review to an appellate court the sole means of review of an order of removal issued under the INA and specifically excludes review under the habeas statutes. *See* H.R. Rep. No. 109-72 (2005) (Conf. Rep.) ("[T]he bill would eliminate habeas review · · · over challenges to removal orders."), *as reprinted in* 2005 U.S.C.C.A.N. 240, 301. The Act applies to "cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division." *See* § 106(b), 119 Stat. 311.

right to petition for direct review of the BIA's 1992 dismissal of the appeal from the deportation order, but he chose not to. *See* 8 U.S.C. § 1105a (1992) (repealed). Under these circumstances, the § 1231(a)(5) bar does not raise the same serious constitutional questions presented in *St. Cyr* or in *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987) (holding that collateral judicial review of a deportation order is required where deportation order is the basis for a subsequent criminal proceeding only when the alien was deprived of the right to judicial review in the initial proceeding). *See Garcia-Marrufo*, 376 F.3d at 1064 (stating that the Supreme Court in *Mendoza-Lopez* specifically noted that its due process rationale would "'not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize . . . is available only in criminal proceedings instituted after reentry'") (quoting *Mendoza-Lopez*, 481 U.S. at 839 n.17).

**C. Necessity of second hearing**. Under the current regulations, the reinstatement decision is one made by an ICE agent after notice and an opportunity to contest the determination. *See* 8 C.F.R. § 241.8 (1999). Mr. Antunez-Obregon argues that the reinstatement of his prior order of deportation affects an important liberty interest, i.e., the right to remain in the

United States [4], so the Due Process Clause requires that he be afforded a second hearing by an ALJ before being deported for the third time.

As discussed above, however, "proof of prejudice is necessary to establish a due process violation in an immigration hearing." *Warner v. Ashcroft,* 381 F.3d 534, 539 (6th Cir. 2004); *accord Garcia-Marrufo,* 376 F.3d at 1064. Mr. Antunez-Obregon can show no prejudice by not having a hearing before an ALJ because he admits that he meets the three criteria for reinstatement of the prior deportation order. Therefore, we need not address his due process argument. *See Garcia-Marrufo*, 376 F.3d at 1064 (noting that, if alien had been afforded additional process, result would have been no different, so alien not entitled to relief); *Duran-Hernandez*, 348 F.3d at 1163 (same).

---

[4] We reject Mr. Antunez-Obregon's premise that he has a constitutional right to remain in the United States. An alien who is already subject to a final order of deportation has no constitutional right to remain in the United States. *See Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001); *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 865 (8th Cir. 2002) ("No illegally reentering alien has a reasonable expectation that his prior deportation order will not be reinstated for purposes of effecting a second removal."); *Berrum-Garcia*, 390 F.3d at 1166 (noting that, under the immigration statutes, "aliens who illegally reenter the country after having been . . . deported generally face a permanent ban on applying for admission").

We affirm the enforcement decision of the ICE.

                                    Entered for the Court


                                    Robert H. Henry
                                    Circuit Judge