**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MO SANJIB SIKDER,

Petitioner-Appellant,

v.

ALBERTO GONZALES, Attorney
General,

Respondent-Appellee.

No. 06-1255
(D.C. No. 05-cv-1833-WYD-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BRORBY**, and **McCONNELL**, Circuit Judges.

Petitioner Mo Sanjib Sikder, appearing pro se, appeals the district court's

dismissal of his habeas petition, which challenged a Board of Immigration

Appeals (BIA) decision denying his requests for asylum and restriction on

removal. Both parties have requested that we construe Mr. Sikder's habeas

petition as a petition for review under 8 U.S.C. § 1252. In the interests of justice,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

we grant that request and we invoke the general transfer statute, 28 U.S.C.
§ 1631, to consider the petition as properly filed in this court.[1]  Nonetheless, we
conclude that Mr. Sikder's challenges to the BIA's decision lack merit and we
therefore exercise our jurisdiction under 8 U.S.C. § 1252 to deny the petition for
review.

I.

Mr. Sikder, a Bangladeshi national, came to the United States on a student
visa in 1991 with authorization to stay until December 31, 1999.  He overstayed
his visa and removal proceedings were initiated against him in 2004.  He filed his
asylum application on February 23, 2005, claiming that he will suffer political
persecution if he is forced to return to Bangladesh.  More specifically, as
Mr. Sikder explained both in his application and at his hearing, he fears

---

[1]     On September 8, 2005, two days after the BIA issued its final order of
removal, Mr. Sikder filed numerous documents in the district court challenging
the BIA's order.  The court construed Mr. Sikder's filings as a habeas petition and
ordered him to submit an application under 28 U.S.C. § 2241, which he did on
September 27, 2005, still within 30 days of the BIA's order.  The district court
ultimately dismissed the habeas petition for lack of jurisdiction under the REAL
ID Act, concluding that this court has exclusive jurisdiction to hear Mr. Sikder's
challenge to his final order of removal.  *See* 8 U.S.C. § 1252(a)(5).  Since
Mr. Sikder filed what was plainly a challenge to the BIA's removal order within
the 30-day deadline mandated by 8 U.S.C. § 1252(b)(1), we may consider his
pleadings as a petition for review transferred to this court under 28 U.S.C.
§ 1631.  *See Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1163 (10th Cir. 2004)
(transferring a wrongly-filed habeas petition under 28 U.S.C. § 1631 and taking
jurisdiction under 8 U.S.C. § 1252); *Duran-Hernandez v. Ashcroft*, 348 F.3d
1158, 1162 (10th Cir. 2003) (treating wrongly-filed habeas petition as a petition
for review and exercising jurisdiction under 8 U.S.C. § 1252).

persecution because he is the son of Siraj Sikder, who was a prominent leftist political leader of the 1970's. After founding the Purba Bangla Sarbahara political party, which claimed to champion the rights of Bangladesh's forsaken underclass, Siraj Sikder was killed while in government custody in 1975. Mr. Sikder contends that members of the Awami League political party, which was then in power, will find him and harm him out of residual ill will towards his father. In filings both in the district court and here, he has stated that sending him back to Bangladesh would be comparable to sending the son of Adolf Hitler to Israel.

The IJ found Mr. Sikder to be a credible witness, but nonetheless rejected his claims. First, he concluded that Mr. Sikder's asylum application was untimely because it was not filed within a year of his 1991 arrival in the United States, as required under 8 U.S.C. § 1158(a)(2)(B). And he concluded that Sikder failed to demonstrate changed or extraordinary circumstances to justify the delay.

With respect to restriction on removal, the IJ found that Mr. Sikder failed to show that he faced a clear probability of persecution or torture so as to qualify for that form of relief. The IJ was not persuaded that he faced any danger by virtue of his father's political activities, because he had remained in Bangladesh unharmed for 15 years after his father's death. The IJ pointed out that Mr. Sikder was not in hiding during that time, but attended a boarding school where his father's alleged enemies could easily have found him. Other factors contributing

to the IJ's decision included the fact that neither Mr. Sikder nor any of his siblings were detained or arrested in Bangladesh and that Mr. Sikder had left the country on a valid passport. For the same reasons, the IJ found that Mr. Sikder would not likely be tortured by the Bangladeshi government. In short, he concluded that "there is nothing to suggest that the government would have any interest in [Mr. Sikder] whatsoever." Admin. R. at 544.

Mr. Sikder appealed the IJ's decision to the BIA, but the BIA agreed with the IJ that his asylum application was inexcusably filed beyond the one-year deadline. It also agreed with the IJ's conclusion that Mr. Sikder did not face a more likely than not chance of being persecuted or tortured upon his return to Bangladesh and therefore he did not qualify for restriction on removal. On September 6, 2005, the BIA issued a brief order[2] affirming the IJ, which, as we explained above, Mr. Sikder timely appealed, albeit in the wrong court.

## II.

Before turning to the merits of Mr. Sikder's appeal, we note that most of his copious filings are exceedingly difficult to follow. In addition to his opening brief, he has submitted various prolix documents advancing rambling, duplicative arguments in support of his petition for review. And all of his filings refer to

---

[2] Because the BIA agreed with the IJ's conclusions, but provided no "discernible substantive discussion" of its own, we may consult the IJ's analysis, which is "all that can give substance to the BIA's reasoning in its order of affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

exhibits and appendices with no apparent relationship to the record on appeal or administrative record. Nonetheless, since he is proceeding pro se, we are obliged to construe his filings liberally. *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).

Having done so, we discern two main arguments in his petition for review. First, he challenges the constitutionality of the one-year deadline set forth in 8 U.S.C. § 1158(a)(2)(B). He does not appear to take issue with the factual determination as to when his application was filed. Nor does he argue that changed or extraordinary circumstances should excuse his delay. Rather, Mr. Sikder contends that the one-year deadline violates his equal protection and due process rights as well as the Supremacy Clause. His second argument is a more general objection to the IJ's findings, which we interpret as a challenge to the evidentiary basis for the denial of his request for restriction on removal.

A.    Asylum

We lack general jurisdiction to review a determination relating to the timeliness of an asylum application. 8 U.S.C. § 1158(a)(3); *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). Under the REAL ID Act, however, we may review constitutional claims or questions of law raised in a petition for review notwithstanding the jurisdictional bar of § 1158(a)(3). 8 U.S.C. § 1252(a)(2)(D); *Diallo*, 447 F.3d at 1281. Still, as we were careful to note in *Diallo*, "challenges directed solely at the agency's discretionary and factual

determinations remain outside the scope of judicial review." *Id.* We therefore have jurisdiction to review the denial of Mr. Sikder's asylum application only insofar as determining whether the BIA's application of the one-year deadline violated his constitutional rights.

### I. Equal Protection

Section 1158(a)(2)(B) of Title 8 of the United States Code provides that an alien may not apply for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." Mr. Sikder argues this statute violates the Equal Protection Clause because it draws an arbitrary distinction between similarly-situated asylum applicants. We disagree.

"When Congress exercises [its] powers to legislate with regard to aliens, the proper standard of judicial review is rational-basis review." *Soskin v. Reinertson*, 353 F.3d 1242, 1255 (10th Cir. 2004) (upholding Colorado medicaid law that distinguishes between subclasses of aliens and explaining that "discrimination among subclassifications of aliens is not based on a suspect classification (such as alienage)."). Thus, Congress's decision to impose a one-year deadline on asylum seekers absent changed or extraordinary circumstances must be upheld if it was rationally related to a legitimate government purpose. Mr. Sikder has "the burden to negate every conceivable basis which might support a legislative classification whether or not the basis has

-6-

a foundation in the record." *Hernandez-Mezquita v. Ashcroft*, 293 F.3d 1161, 1164 (9th Cir. 2002) (quotation and alteration omitted).

It is unclear from Mr. Sikder's brief why he thinks the one-year deadline for asylum seekers is irrational. But it seems to us that § 1158(a)(2)(B) is rationally related to at least one legitimate government purpose, that is "identifying those aliens who immediately indicate[] a desire to stay in the United States because of a genuine threat of persecution." *Id.* at 1165 (rejecting equal protection challenge to filing deadline of Nicaraguan Adjustment and Central American Relief Act). Accordingly, we conclude that the one-year deadline set forth in § 1158(a)(2)(B) has a rational basis and we reject Mr. Sikder's equal protection argument.

### ii. Due Process

Mr. Sikder's due process argument, which appears to be that the one-year deadline is arbitrary and unreasonable, likewise lacks merit. "The Fifth Amendment entitles aliens to due process of law in removal proceedings." *Diallo*, 447 F.3d at 1280. The Supreme Court has held, however, that due process is not violated when Congress imposes a reasonable limitations period on the filing of naturalization petitions. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988). At least one of our sister circuits has extended the Court's holding in *Pangilinan* to the one-year deadline of § 1158(a)(2)(B).

The one-year period of limitations for filing an asylum application under 8 U.S.C. § 1158(a)(2)(B), which is tempered by the tolling provisions of § 1158(a)(2)(D), provides an asylum applicant an opportunity to be heard at a meaningful time and in a meaningful manner. The one-year period is not an unreasonable requirement for triggering the right to an adjudication, and, thus, an alien is not deprived of due process when his or her asylum claim is denied for failure to comply with the requirement.

*Sukwanputra v. Gonzales*, 434 F.3d 627, 632 (3rd Cir. 2006). We agree and therefore reject Mr. Sikder's challenge under the Due Process Clause.

*iii. Supremacy Clause*

Mr. Sikder's remaining constitutional argument appears to be that the one-year deadline violates the Supremacy Clause because it conflicts with Article 33 of the 1951 United Nations Convention on the Status of Refugees.[3] Article 33 provides that "[n]o Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers or territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987) (emphasis omitted). In order to qualify for protection under Article 33, an applicant must show (1) that he is a refugee, i.e., he has a well-founded fear of persecution; and (2) that his life or freedom would be threatened if deported. *Id.* at 440-41. Because, as explained below, Mr. Sikder

---

[3]     In 1968, the United States acceded to the 1967 United Nations Protocol Relating to the Status of Refugees, thereby agreeing to be bound by the substantive provisions of Articles 2 through 34 of the 1951 Convention. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987).

failed to make either of these showings, he does not qualify for protection under Article 33. It is therefore unnecessary for us to address his Supremacy Clause challenge to 8 U.S.C. § 1158(a)(2)(B). *See United States v. Cusumano*, 83 F.3d 1247, 1250-51 (10th Cir. 1996) (explaining that we do not address constitutional questions unless absolutely necessary).

B.      Restriction on Removal

Restriction on removal prohibits the removal of "an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "In order to demonstrate eligibility for [restriction on removal], the applicant must establish a clear probability of persecution through presentation of evidence establishing that it is more likely than not that the applicant would be subject to persecution." *Woldemeskel v. INS*, 257 F.3d 1185, 1193 (10th Cir. 2001) (quotation and alteration omitted). Once the BIA makes a determination as to an applicant's eligibility, we may not reverse it unless the evidence not only supports, but compels a different conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). In reviewing the BIA's decision,

> [w]e consider any legal questions de novo, and we review the
> agency's findings of fact under the substantial evidence standard.
> Under that test, our duty is to guarantee that factual determinations
> are supported by reasonable, substantial and probative evidence
> considering the record as a whole.

*Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

The BIA rejected Mr. Sikder's request for restriction on removal because it concluded that he failed to establish that "he more likely than not would be persecuted on account of a protected ground, or tortured . . . if he were returned to Bangladesh." Admin. R. at 2. We conclude that substantial evidence supports this determination. The evidence supports the IJ's findings that Mr. Sikder remained in Bangladesh unmolested for 15 years after his father died and was allowed to leave on a valid passport. Moreover, although the Awami League ruled Bangladesh from 1996 to 2001, there is no evidence of a warrant being issued for Mr. Sikder's arrest during that time or any indication that Siraj Sikder's other children were targeted for persecution. There is only one document in the record that even mentions the possibility of Siraj Sikder's children being in danger. It is an email from Anne Salinas, Senior Program Officer for the Center of Civil Society and Governance in Washington, D.C., to Sarah Sohn, Senior Legal Fellow of Immigration Equality, also based in Washington. The email, which is dated May 11, 2005, responds to Ms. Sohn's inquiry into conditions in Bangladesh for known relatives of Siraj Sikder. Ms. Salinas, forwarding information from "local staff" responds:

> The issue is sensitive at the moment. Maoist party of Siraj Sikdar [sic] is banned by Bangladesh. They are under constant watch of RAB and other LEA. They may be active in underground. He might be facing a problem if he is back in Bangladesh known as Siraj Sikder's son. Information source is difficult to suggest.

-10-

*Id.* at 523. Even if the individual whose opinion is expressed in this email were confident that Mr. Sikder would be persecuted upon his return to Bangladesh, we could not overturn the BIA's decision based on the opinion of a single staff member of the Center of Civil Society and Governance. Despite this email, the record as a whole contains substantial evidence to support the BIA's decision. Our conclusion applies equally with respect to Mr. Sikder's request for restriction on removal under the Immigration and Nationality Act and under the regulations implementing the United Nations Convention Against Torture. Since we also reject his constitutional challenge to the denial of his asylum application, we must affirm the BIA's final order of removal. The petition for review is DENIED.

All pending motions are DENIED as moot, with the exception of Mr. Sikder's July 27, 2006, Motion To Convert The Habeas Corpus Into A Petition For Review; And If Possible To Split Into Two Cases, which is granted in part and denied in part. That part of the motion asking us to construe Mr. Sikder's habeas petition as a petition for review is GRANTED. In all other respects the motion is DENIED.

Entered for the Court

Michael W. McConnell
Circuit Judge

-11-